JONES, Justice:
This case is from the Circuit Court of Prentiss County. An appeal had been taken to that court from an order of the County Board of Education which had been adopted March 14, 1968. By the order the systems of operation at two attendance centers of the countywide district, (excluding part of a municipal separate district), known as New Site and Marietta, were to be changed so that beginning with the 1968-1969 school session, grades 1 through 6 would be taught at Marietta, and grades 7 through 12 would be taught at New Site. This was different from the provisions of the original long-range plan for said countywide school district adopted in accordance with the school laws, New Site being then a school with grades 1 through 8, and Marietta, a school with grades 1 through 12.
By this order the organization and operations of said centers were changed, the change involving a transfer of teachers, and classes of pupils, en masse. The efficiency of the new operation was to be considered because there was involved, in addition to teachers and pupils, a question as to rearranging bus routes, drivers, etc.
Both Marietta and New Site had received money from the State Educational Finance Commission based upon the long-range plan.
In the instant case the circuit court approved said order; but held that it would be effective only when submitted to and approved by the State Educational Finance Commission.
On this appeal, the only question presented is, whether such an order should be submitted to such Commission. We do not deem it therefore necessary to discuss any other facts in order to decide this question.
At the time of the adoption of our present school laws, in 1953, our State Constitution provided that it was the duty of the Legislature to encourage the promotion *667 of intellectual, scientific, moral, and agricultural improvement, by establishing “a uniform system of free public schools by taxation or otherwise” for all children between 6 and 21 years of age. While this provision was later amended so as to make the maintenance of free public schools discretionary with the Legislature (1960), the school laws here involved were adopted prior to such amendment. We deem it necessary to consider the laws here involved in the light of section 201 of the Constitution as it existed when these acts were adopted.
The section numbers hereinafter mentioned are the sections of our annotated code of 1942, shown by the 1966 cumulative supplement thereto. Practically all, if not all, of the laws mentioned herein were adopted in the year 1953 at an extraordinary session of the Legislature.
Section 6216-01 provided that there “shall” be maintained a uniform system of free public schools with grades 1 through 12.
With section 6246-01 begins the provisions of our statutes relative to the State Educational Finance Commission. That section declares the policy of the state, and, recognizes that in order to discharge the constitutional mandate heretofore mentioned, it was the duty of the Legislature to establish such a uniform system. The burden of providing such equality could no longer be borne by the local taxing units alone and for this reason, a program of state aid should be instituted. It was declared that the maintenance of such a system was the joint responsibility of the State and local taxing units.
The next section created the State Educational Finance Commission.
Section 6246-08 provides that the Commission shall distribute, subject to the provisions of law, all funds available for construction, improving, etc., school buildings or other facilities; that no funds would be distributed to any district until it had conclusively shown that it had complied with all the requirements of the laws for the operation of schools, and until the district shall have complied with all the applicable regulations of the Commission.
Section 6246-09 authorizes the Commission to promulgate such rules and regulations as shall be necessary and proper.
Section 6246-11 directs the Commission to formulate policies and approve or disapprove plans for the location and construction of all necessary school buildings, and the Commission, subject to any applicable statute, was given supervision over, and the power to approve, or disapprove, all surveys of educational needs made by any board, and to assist in making such surveys and to make its own supplemental surveys of such needs.
Article 3B of the school laws begins with section 6247-01 and provides for state aid for construction of school facilities and the administration of the act by the Commission.
Section 6247-03 provides that the State should make an annual contribution or grant of $12 for each child in average daily attendance in the public schools of this State during each school year, and that such funds be applied to establish and maintain adequate physical facilities for the public school system or for the payment of existing debts. The third paragraph of that section provides that the grant to which a school is entitled shall be credited to the school district of which such school is a part, and if any change is made in any operation or boundary of any such school district, equitable reallocations shall be made by the Commission of all balances to the credit of the school district, and all debits charged against the districts affected by the change in boundaries or system of operation. The grants are required to be computed annually as soon as practicable after the end of the school year, and are based on the average daily attendance for such school year in all of the public schools operated by each district.
*668 Section 6247-04, in the fourth paragraph, provides that when the annual grants have been computed, the Commission shall credit each school district with the amount of the annual grant, and shall issue to each district a certificate of credit for the amount thereof. Such certificates are non-transferable, non-negotiable, and without interest. They are to be held by the district until the expenditures of the funds of such district are approved by the Commission.
Section 6247-05 reads, in part, as follows:
No grants accruing to any school district shall be expended for any purpose unless such expenditure has been approved by the commission. In order to guide the commission in passing upon requests for the use of grants, the county boards of education of the respective counties and boards of trustees of municipal separate school districts are directed to prepare a survey of necessary capital improvements and/or a plan for tax relief on school indebtedness within each school district. Such surveys shall show existing facilities, desirable consolidations, the new construction and new facilities necessary and desirable for the efficient operation of the public schools of the school districts and the plan of tax reduction in the school districts by use of such funds in retiring any outstanding indebtedness for school facilities. The commission shall not approve any application for the use of funds of the said public school building fund from the board of trustees or other governing body of any school district until such time as an acceptable and reasonably satisfactory plan, looking particularly to efficiency through consolidations of school attendance centers, has been submitted by the county board of education or boards of trustees of municipal separate school districts, and all applications from school districts shall conform to the plan of the county board of education, or boards of trustees of municipal separate school districts, as the case may be. (emphasis added).
It was from this section that the long-range plans developed and under the section giving the Commission the power to issue rules and regulations, it did issue regulations of which we take judicial notice (Briscoe v. Buzbee, 163 Miss. 582, 143 So. 887 (1932), covering the preparation for submission to the Commission of such “long-range plans to provide equal facilities.” The forms provided under the regulations called for the listing of the schools and the grades taught in such schools or attendance centers. The Commission also prepared and furnished forms for execution when a district desired to change its long-range plan. The forms, of course, when executed, were to be sent to the Commission for approval or disapproval.
This was the procedure followed by Pren-tiss County in the original reorganization, and the record discloses that each of the centers here involved received loans through the Commission. We consider whether they had been repaid immaterial. Presumably, funds are continuously accumulating.
Section 6248-07 provides for transfer from one district to another of a pupil upon petition by his parent or guardian but to be considered on an individual basis.
Section 6274-06 provides that after school districts have been reconstituted and created in the manner described by section 6328-01 et seq., the county board of education shall have full jurisdiction, power, and authority to abolish any existing district other than a municipal separate school district, to change or alter the boundaries of any such district, or create any new districts, and to otherwise create, alter, or abolish any of the school districts other than municipal separate school districts.
Subsection (e) of said section provides, however, that no order of such nature made by the county board of education whether with or without a petition therefor shall be *669 final unless and until submitted to and approved by the Finance Commission.
Subsection (f) of said section provides that the Finance Commission shall not pass upon, approve or disapprove any such order until the time for appeal shall have expired, nor shall they pass upon or approve or disapprove such order until any such appeal, if taken, shall have been finally determined.[1]
Article 9A of the school acts beginning with section 6328-01 provides for the consolidation and reorganization of school districts.
The said section 6328-01 provides that all districts in existence upon the effective date of the act are abolished, but shall continue to exist until it shall have been reconstituted or consolidated with other territories. It then provides that as soon as practicable and in no event later than July 1, 1957, the county board of education of each county pursuant to its survey thereof to determine the educational needs from the standpoint of efficiency of operating schools and school districts shall consolidate the territory of such school districts in the county or reconstitute such existing districts as the board shall deem necessary to promote the physical, mental, moral, social and educational welfare of the children, the efficiency of the operation of the schools, and the economic and social welfare of the various school areas. A copy of the order made by the county board shall be transmitted to the State Educational Finance Commission and shall be considered by it from the standpoints above stated. It shall be approved or disapproved by said Commission. The act further próyides that no such order shall be effective until finally approved by the Commission. Moreover, this section provides for a public hearing before the State Educational Finance Commission for the purpose of an appeal.
Section 6328-05 provides for the retention of existing school buildings. The board of trustees is authorized to designate locations for buildings and attendance centers in the district subject to its jurisdiction and to change, alter, or abolish the location of such school buildings and attendance centers from time to time as may be required by the educational needs of such school district. It is provided, however, if any change or alteration of any school or attendance center shall involve the construction of a new school facility or repairs, etc., same shall not be effective until submitted to and approved by the State Educational Finance Commission. This same act says that the board of trustees or other governing body of the school district shall have the power and authority to specify the attendance areas which shall be served by each attendance center and to change, alter, or abolish same as necessity requires.
Section 6328-08 provides that after July 1, 1957, if the governing authority of any district find it necessary to abolish or reorganize such school district, they may do so in the same manner provided for in this act for the original création of such school district. (6328-01).
Section 6328-31 provides that the board of trustees shall organize a school so as to avoid unnecessary duplication and shall determine what grades shall be taught at each school and shall have the power to specify attendance areas and to designate the school each pupil shall attend.
Appellants rely heavily upon this particular section. To us it fits the general plan. Certainly it was not contemplated there would never be any new schools organized after the adoption of the laws of 1953 and if such were to be done, the board of trustees (the county board of education being the trustees in countywide *670 districts) were the ones to organize the school determining what grade should be taught there, and designating what pupils should attend. As it designated the attendance area and the classes to be taught at the attendance center, naturally, the children in the grades so specified would be the ones to attend that center. In fact the act contemplates that changes will be made in the district and in their operations, and the trustees are the ones to establish such a school. This does not mean, however, that reorganization or rearrangement of the district would not be subject to approval by the State Educational Finance Commission. On the contrary, such approval is required by the school laws, supra.
Section 6334-01 provides that the trustees may assign a pupil who appears or presents himself for enrollment. However, this assignment is made on an individual basis and not en masse.
It must be remembered that Prentiss County reorganized under the provision of section 6328-01 and filed its long-range plans in accordance with said section and the regulations promulgated by the Finance Commission. In said plans, it designated the two attendance centers of Marietta and New Site and the grades that shall be taught at each attendance center, which plan was approved. It is now sought by the county trustees to change this plan that they had submitted to the State Educational Finance Commission, and on which had received according to the record, money. In other words, they want to now alter and change the long-range plan approved by the Commission at their request without submitting such change to the Commission. They say they do not want any money from the Commission. However, the money is presumably there, and as shown by the statutes mentioned, is allowed to the district on a per pupil basis. Presumably $12 for each child is allocated to each attendance center in the district. The statutes provide that when any change in the district or system of operation is made, the Commission shall make a reallocation of the funds due to the district. This reallocation could only be made as to attendance centers (unless such change involved another district); otherwise, any change in the method of operation would not require a reallocation of the funds— they would simply remain as the property of the district. In all of the statutes relating to attendance centers, it is said that the trustees may fix the area to be served by said districts rather than the students to be served. Two statutes do provide that students may be admitted or assigned by the trustees but on an individual basis.
We do not believe that the Legislature intended by section 6328-31 to mean that the board of trustees may transfer students en masse from one school or attendance center to another, but as stated, obviously it means, when and if organization of another school is necessary, the board of trustees may organize that school and designate the grades there to be taught, and it is only natural that if they designate a school to teach grades 1 through 7; they will assign students of such grades in the area to that particular school. Where there is a transfer of pupils other than on an individual basis, it would prevent uniformity to permit the center losing pupils to keep all the money allocated to it.
The Legislature defined its purpose to be the establishment and maintenance of a uniform system of schools and put a part of the burden thereof upon the State, recognizing it as a joint responsibility. There are eighty-two counties in the State, each in 1953 containing more than one school district. If there were not some person or body having something to say over the entire State, the maintenance and operation of the schools would be by the local officials without regard to uniformity through the State. Each county would construct, maintain, and organize its school buildings and district facilities in accordance with its own ideas and there would be a complete lack of uniformity throughout the State.
*671 It was evidently the intention of the Legislature that the State Educational Finance Commission be established for the purpose of creating and maintaining such uniformity between the school districts in the various counties, and that unless it has something to say as to the obedience or disobedience of the long-range plan submitted by a county and of changes and alterations therein, it would be impossible to secure and maintain the uniformity that was intended.
We think the lower court was correct in holding that said order would be ineffective until approved by the State Commission.
Summarizing some of the circumstances, (certainly not all), which lead us to this conclusion, we find from the statutes:
1. The purpose of our school laws is to maintain a uniform system.
2. The State assumes joint responsibility therefor, and the Commission is the arm of the State and the only authority which can establish and maintain a uniform system throughout the eighty-two counties.
3. The Commission, among other things, passes upon the efficiency of the schools and systems proposed by the districts. The courts have no way or jurisdiction to determine such issue.
4. When a district changes the grades to be taught at a center, there are numerous things to be considered, to determine the efficiency in operating under such new plan, including among others, the availability of teachers, the transportation of pupils within the area prescribed for the center, and whether the new plan is efficient and will better serve the people than the long-range plan approved.
5. The reallocation of funds, when a change in system of operation or boundaries of a district is made, can be most efficiently brought about by a continuing system of management with reference to a carefully thought-out long-range plan of operation.
Affirmed.
ETHRIDGE, C. J., and RODGERS, BRADY, and SMITH, JJ., concur.

. This is the section under which this appeal is taken.
Section 6328-01 also provided for an appeal where the original order was not satisfactory to all concerned. The procedure there was different.