ROBERTSON, Justice,
for the Court:
I.
This case presents important questions concerning the authority of a public school board to consolidate schools within its district and to reassign students en masse. The matter calls for a sensitive interpretation of provisions of the Uniform School Law of 1986.
What has happened is that the county school board has decreed that all students in grades ten through twelve, until 1989, attending four separate schools, should thereafter attend a single high school. The Circuit Court held that the school board had not thus “reorganized” the district but had acted well within its authority. We affirm.
II.
In 1953, the legislature abolished all school districts as they had theretofore existed, Miss.Laws, ch. 12, § 1 (Ex Sess. 1953), and in the same enactment provided how new districts might be reorganized and reconstituted. Wayne County organized a county unit public school system and established schools at four locations around the county: Waynesboro, Bucka-tunna, Clara, and Beat Four. In each school the county offered public education, elementary school through high school, grades one through twelve. For the next thirty-six years, the Wayne County Board of Education operated these four schools.
Over time, changes in demographics, levels of enrollment, availability of qualified teachers, financial resources, and, more generally, the evolving realities of public education in an essentially rural area led the Board to rethink matters. The Board looked at the high school level, grades ten through twelve, and found unnecessary duplication of courses and programs within the district, that there were many courses offered which only a handful of students attended, one class having as few as three students while others having no more than six. Deciding that something had to be done, the Board of Education, on April 10, 1989, entered the following order:
On motion by Mr. Odom seconded by Mr. Pryor, an order was passed to designate Waynesboro Central High School as the school where grades 10 through 12 shall be taught for all students attending the public schools of the Wayne County School District at the beginning of the 1989-90 school year, pursuant to authority contained in 37-7-301, 37-7-311, and 37-7-315 of the Mississippi Code, Annotated, 1972, as amended.
Each of the five members of the Board of Education voted “Aye.”
As required by law, the plan was submitted to the State Board of Education for its consideration, and, on April 21,1989, the State Board formally approved
Transfer Grades 10-12 from Beat Four Attendance Center, Buckatunna Attendance Center, and Clara Attendance Center to Waynesboro Central High School.
The State Superintendent of Education advised the district of this action by letter, in which he concluded
I want to commend you and the members of the Wayne County Board of Education *621 for your foresight in establishing one high school for your system. I truly believe that this action will result in a more efficient operation and a broadened curriculum for your students.
Many who lived in the more rural parts of Wayne County were not similarly impressed. They formed a voluntary association and took the name Citizens Involved Voluntarily In Consolidation whose acronym is CIVIC. In short order, CIVIC presented the School Board a petition signed by 2,952 qualified registered voters of Wayne County — 22.99 percent of those in the county — objecting to the consolidation and demanding a referendum election. CIVIC claimed that the proposed consolidation was a “reorganization of the school district” within Miss.Code Ann. § 37-7-105 (Supp.1988).[1] For matters within its coverage, the statute requires a public referendum election upon petition of twenty (20%) percent of the school district’s qualified electors.
On June 17, 1989, the Board formally considered CIVIC’s petition and denied it, reasoning that the consolidation of the four high schools into one was not the “reorga-niz[ation of] a school district” within Section 37-7-105, in consequence of which the statute’s petition and referendum procedures did not apply. The Board proceeded apace with its plans, and on June 29, 1989, accepted bids for construction of a new wing to the existing facilities at Waynes-boro Central High School to provide for the enlarged attendance the consolidation would visit upon that school.
Undaunted, CIVIC pressed forward and, on July 20, 1989, commenced the present action in the Circuit Court of Wayne County, Mississippi, naming as defendant the Wayne County Board of Education. CIVIC sought a writ of mandamus to the Board, directing that it accept Section 37-7-105 coverage and order a public election on the proposed consolidation. In addition and in the alternative, CIVIC pled for preliminary and permanent injunctive relief that the Board call the election and withhold construction, improvement of facilities or other aspects of the consolidation plan pending the election.
The Board answered and moved for summary judgment. The matter was promptly brought to the attention of the Circuit *622 Court which, on August 21, 1989, released an opinion granting the Board’s motion and dismissing the complaint. The Court held that the Board of Education had authority to effect the consolidation by virtue of Miss.Code Ann. § 37-7-311 (Supp.1988).[2] The Court further held that Section 37-7-105 covered only the reorganization of the geographical or territorial boundaries of the school district and had no application to large-scale pupil transfers incident to a consolidation within the theretofore existing district boundaries.
CIVIC now appeals to this Court. The consolidation has been accomplished; no court has ordered any stay pending appeal.
III.
CIVIC urges that the Circuit Court erred in its reading of the statutes. That Court treated the question as one of law and particularly of statutory interpretation and was correct in this regard. Because of this, we treat the judgment below as though the Court had dismissed the complaint for failure to state a claim upon which relief may be granted. Miss.R. Civ.P. 12(b)(6); Walton v. Bourgeois, 512 So.2d 698, 699-700 (Miss.1987); Millican v. Turner, 503 So.2d 289, 292 (Miss.1987).
We accept without hesitation that, however desirable changes in educational services and systems may be, school boards may make them only as provided by law. School boards have no powers that they may not exercise consistent with the laws of this state, constitution, statute or otherwise. Cf. Warren County Board of Education v. Wilkinson, 500 So.2d 455, 459 (Miss.1986).
The School Board points to Section 37-7-311 which has been on our statute books for years.[3] Sensibly reading the phrase “a school” to read “its schools,” this law empowers a school board to “organize its schools” by reference to one major criteria, to-wit: to avoid unnecessary duplication. The statute then goes further to empower the board to “determine what grades should be taught at each school ... and to designate the school each pupil shall attend.” More generally, Miss.Code Ann. § 37-7-301(a) (Supp.1988) empowers the school board “to organize and operate the schools of the district ... as, in their judgment, will serve the best interests of the school.” The Board also points to Miss. Code Ann. § 37-7-315 (Supp.1988) authorizing it to designate the location of school buildings and attendance centers within the school district.
On first reading these statutes appear sufficient unto the day,[4] coupled, of course, with the approval and sanction given by the State Board of Education.
This latter point packs no small punch. We have today a matter of statutory interpretation, committed initially to an agency within the executive department of the government, here the State Department of Education. Notwithstanding our ordinarily de novo review of questions of law, we have accepted an obligation of deference to agency interpretation and practice in areas of administration by law committed to their responsibility. See, e.g., Grant Center Hospital of Mississippi, Inc. v. Health Group of Jackson, Mississippi, Inc. d/b/a/ Riverside Hospital, 528 So.2d *623 804, 808 (Miss.1988); General Motors Corp. v. Mississippi State Tax Commission, 510 So.2d 498, 502 (Miss.1987); Mississippi Employment Security Commission v. Philadelphia M.S.S.D., 437 So.2d 388, 394 n. 6 and 398 n. 13 (Miss.1983); Gully v. Jackson International Co., 165 Miss. 103, 145 So. 905, 907 (1933); see also, Red Lion Broadcasting Co. v. Federal Communications Commission, 395 U.S. 367, 380-81, 89 S.Ct. 1794, 1801-02, 23 L.Ed.2d 371, 383-84 (1969); Udall v. Tallman, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616, 625 (1965); Williams v. St. Clair, 610 F.2d 1244, 1248-49 (5th Cir.1980). This duty of deference derives from our realization that the everyday experience of the administrative agency gives it familiarity with the particularities and nuances of the problems committed to its care which no court can hope to replicate. See NLRB v. Hearst Publications, 322 U.S. 111, 130, 64 S.Ct. 851, 860, 88 L.Ed. 1170, 1184 (1944). The State Board of Education has spoken, and we should listen.
Notwithstanding, CIVIC struggles mightily that we believe consolidation the sort of change in school operations that cannot lawfully be made without giving public notice of the Board’s intention in that regard and without a public referendum election, provided only that as many as twenty (20%) percent qualified electors of the school district so petition. CIVIC points to the word “reorganizes” in Section 37-7-105 and claims that the consolidation plans at issue are a reorganization. It is certainly true that the word “reorganize” does not appear in the predecessor version of Section 37-7-105.[5] CIVIC urges sensibly that introduction of the new word “reorganizes” “must mean something” more than what was in the law’s prior form. Upon first reading the present form of the statute and its verbal trilogy of “abolishes, alters or reorganizes,” reflective candor suggests an insecure draftsman, embtied with the lawyer’s penchant for never using one word where two or three will do just as well. Still, we are not at liberty to ignore that three separate words were used, nor to find these three words mere redundancies.
We have searched the Uniform School Law of 1986 in vain for any definition of “reorganize” or “reorganization.” We find none and, in the end, must take our cue from the verb’s object. Section 37-7-105 and its petition, publication and referendum procedures do not apply to everything the school board may wish to abolish, alter or reorganize. When we read the statute we find that it applies only where the school board “abolishes, alters or reorganizes a school district.” The phrase “school district” is not defined, but we think it common ground that it imports the geographic boundaries of the district and perhaps the corporate organization or structure thereof.
When we step back from the brief opening phrase of Section 37-7-105, we find that it is set amidst Article 3 of our Code on School Districts and their trustees, entitled “Abolition, Alteration and Creation of Districts.” By virtue of amendments emanating from the Uniform School Law of 1986, Article 3 contains seven statutory sections. A careful reading of the entire Article 3 makes clear that the lone subject it addresses is the boundaries of school districts.[6] For example, the first section, *624 Miss.Code Ann. § 37-7-103, empowers the board “to abolish such existing district, or to reorganize, change or alter the boundaries of any such district.”[7] Section 37-7-105 merely establishes procedural requisites that must be met in carrying out the general grant of authority contained in Section 37-7-103. The statutory scheme emerges. If, under Section 37-7-103, the school board decides to “reorganize, change or alter the boundaries” of the district, Section 37-7-105 requires that it publish its intention to do so and receive petitions from objectors. The remaining sections provide for the procedure at a referendum election (§ 37-7-105), that two-thirds of the electorate may by petition abolish the district without election (§ 37-7-107), a procedure to alter disputes pursuant to electors’ petition (§ 37-7-109), the effect of abolition or alteration on district indebtedness (§ 37-7-111), the necessity for State Board approval for any reorganization, abolition or alteration of a school district (§ 37-7-113), and for judicial review (§ 37-7-115). We find no reference in Article 3 to consolidating schools within a district.
The Circuit Court accepted this reading of Section 37-7-105 and reasoned
... this statute controls in those cases wherein the school board of a school district desires to abolish an existing school district or to reorganize, change or alter the boundaries of any such school district. Said statute also provides that, under circumstances, the school board may add to or detach territory from the school district. The court is of the opinion that such a situation does not exist in the case at bar for all of the four (4) attendance centers subject to the order of the school board are located within one school district. There has been no reorganization, change or alteration of the school districts’s boundaries and therefore, the court finds § 37-7-103 and § 37-7-105 are not applicable to the case at bar.
This reading is correct and is reinforced by other language in the Uniform School Law. See Miss.Code Ann. § 37-6-3(2) (Supp.1990). Five (5) types of school districts are specifically mentioned: countywide school districts, municipal separate districts, special municipal separate districts, consolidated districts, and line consolidated districts. Miss.Code Ann. § 37-6-3 (1989 Supp.). These classifications may be generalized into three broad categories: County-wide districts, Municipal separate districts, and Consolidated districts. When defined, the significance of boundaries becomes apparent:
County-wide school district: School districts ... which embrace all territory of a county except the territory embraced within the limits of a municipal separate school district.
Municipal Separate school district: districts which embrace and always include a city or large town.
Consolidated school district: school districts other than municipal separate school districts and county-wide school districts ... which may include territory in more than one county.
Our law’s classification of school districts turns on the geographical features of the district. The importance of such classifica *625 tion is reflected in the fact that application of various statutes depends upon the type of district in question. Compare Miss. Code Ann. § 37-7-203 (1989 Supp.) (selection, term and qualifications of trustees of municipal separate school districts); Miss. Code Ann. § 37-7-207 (1989 Supp.) (selection and term of trustees of consolidated districts).
All of this heavily informs the meaning of “reorganization” for the case at bar. The Board actions here challenged did nothing to alter the existing structure of the district which has remained a county-wide district. There has been no reorganization of corporate structure. Lines of control and authority were not affected by the Board’s actions. Neither under the statutory wording nor an analysis of the common meaning of the term does the Board’s school consolidation actions constitute a “reorganization of the school district.” Specifically, we find nothing in Section 37-7-105 that eviscerates the express grants of authority we have found in Sections 37-7-301(a), -311, and -315.
CIVIC’s reliance upon Board of Education of Prentiss County v. Wilburn, 223 So.2d 665 (Miss.1969) is misplaced. The Prentiss County Board of Education had previously operated two complete schools, Marietta and New Site, each housing grades one through twelve. The Board ordered that, beginning with the 1968-69 school year, grades one through six would be taught at Marietta, while grades seven through twelve would be taught at New Site. Wilburn, 223 So.2d at 666. The question was whether the Board could implement the plan without state approval, particularly in light of substantial departures from the Board’s state-approved long range plan. The Circuit Court upheld the order, conditional upon the Board submitting it to the State Educational Finance Commission[8] securing approval of that agency. Wilburn, 223 So.2d at 666. On appeal, the only issue was the legal correctness of this condition upon the board’s order. Wilburn, 223 So.2d at 666. This Court affirmed.
Applying Wilburn to today’s case (and accepting that the statutes have been amended), the Board did submit its proposed consolidation plan to the State Board of Education and received its approval. As such, the Board followed Wilburn’s mandate. State Board approval obtained, the Wayne County Board was within the authority conferred by Sections 37-7-311 and 37-7-315.
Wayne County Board of Education’s plan was not a “reorganization of the school district” within Section 37-7-105, and the Circuit Court correctly so held.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER, SULLIVAN, ANDERSON, PITTMAN and BLASS, JJ., concur.
DAN M. LEE, P.J., concurs in results only.

. § 37-7-105. Procedure to abolish, alter or create a district in absence of petition filed by electorate.
In cases where the school board abolishes, alters or reorganizes a school district without a petition therefor as is otherwise provided in Sections 37-7-107 and 37-7-109, the school board shall publish the order reorganizing, altering or abolishing such district or districts in some newspaper published and having a general circulation in such district(s) once each week for three (3) consecutive weeks, which said order shall be duly certified by the president of said school board. If no newspaper be published in said school district, then such order shall be published for the required time in some newspaper having a general circulation therein, and, in addition, a copy of said order shall be posted for the required time at three (3) public places in the school district. The order so published shall contain a provision giving notice that said order shall become final thirty (30) days after the first publication of said notice unless a petition is filed protesting against same within such time. In the event no such petition be filed, the said order shall become final at said time.
However, in the event twenty percent (20%) of the qualified electors of any school district reorganized, altered or abolished by such order shall file a petition with the school board, within thirty (30) days after the first publication of said notice; protesting against the reorganization, alteration or abolition of such district, then an election shall be called and held, on order of the school board, by the county election commission(s), after publication of legal notice of such election, which said election shall be held within thirty (30) days after the first publication of the notice of such election. At such election the question shall be submitted to the qualified electors of the district or districts affected and from which a petition is filed as to whether or not such district or districts shall be reorganized, altered or abolished as provided in the said order of the school board. If a majority of those voting in said election in each district affected and from which a petition is filed shall vote in favor of the order of the school board then such order shall become final. If a majority of those voting in said election in any district from which a petition is filed shall vote against the order of the school board then such order shall be void and of no effect and no further attempt to make the proposed change in such district shall be made for a period of at least two (2) years after the date of said election.

. § 37-7-311. Organization of school.
The school board shall organize a school so as to avoid unnecessary duplication and shall determine what grades shall be taught at each school and shall have the power to specific attendance areas and to designate the school each pupil shall attend.
Section 37-7-311 has been a part of our law at least since 1953. See Miss. Laws, ex. sess. ch. 17, § 11 (1953); originally codified as Miss. Code Ann. § 6328-31 (1942, as amended).

. § 37-7-311. Organization of school.
The school board shall organize a school so as to avoid unnecessary duplication and shall determine what grades shall be taught at each school and shall have the power to specify attendance areas and to designate the school each pupil shall attend.
SOURCES: Codes, 1942, § 6328-31; Laws, 1953, Ex Sess, ch. 17, § 11; 1986, ch. 492, § 14, eff from and after July 1, 1987.

.We regard anything appearing to the contrary in Board of Education and Prentiss County v. Wilburn, 223 So.2d 665, 670 (Miss.1969) obiter dicta, and unfortunate dicta at that, and disapprove it.

. The pre-1986 version of Section 37-7-105 reads as follows:
§ 37-7-105.
In cases where the county board of education abolishes, alters or creates a school district without a petition therefor as is otherwise provided in sections 37-7-107, 37-7-109, the county board of education shall publish the order creating, altering, or abolishing such district or districts in some newspaper.... Effective July 1, 1987, the Uniform School
Law amended the statute to read as follows: § 37-7-105
In cases where the school board abolishes, alters or reorganizes a school district without a petition therefor as is otherwise provided in Sections 37-7-107 and 37-7-109, the school board shall publish the order reorganizing, altering or abolishing such district or districts in some newspaper....

. The pre-1986 version of Section 37-7-105 originated in the 1953 legislation mandating massive consolidation and reorganization of the school districts of this state. Miss.Laws, ch. 16, § 6(b) (Ex Sess.1953). Section 6 of that enactment contains six subparagraphs, lettered (a) *624 through (f), which largely correspond to present Code Article 3, Chapter 7, Title 37. The overall context of the 1953 special legislation suggests that reorganization concerns the reconstitution of the boundaries and corporate structures of the school districts. The specific context of Section 6, chapter 16, of that legislation reflects exclusive concern with the geographical boundaries of school districts.

. § 37-7-103. Abolition, alteration or creation of districts by county board of education.
From and after July 1, 1987, the school board of. any school district shall have full jurisdiction, power and authority, at any regular meeting thereof or at any special meeting called for that purpose, to abolish such existing district, or to reorganize, change or alter the boundaries of any such district. In addition thereto, with the consent of the school board of the school district involved, the school board may add to such school district any part of the school district adjoining same, and with the consent of the school board of the school district involved, may detach territory from such school district and annex same to an adjoining district.

. We take note that as of July 1, 1988 the legislature abolished the State Educational Finance Commission. Miss.Code Ann. § 37-45-3 (1989 Supp.). Its duties and responsibilities were thereafter assumed by the State Board of Education. Miss.Code Ann. § 37-45-3 (1989 Supp.).