587 So.2d 244 (1991)
City of DURANT, Mississippi, W.B. Johnson, John W. Glover, Swisher Hobbs, Faye Durham, Miles Ray, Frank Cox, Henry L. Mitchell, Earl Dodd Browning, William F. Irby, Wiley Humphries, Margaret Lomax and Daisy Glover,
v.
HUMPHREYS COUNTY MEMORIAL HOSPITAL/EXTENDED CARE FACILITY and the Mississippi State Department of Health.
No. 07-CA-59324.
Supreme Court of Mississippi.
September 18, 1991.
*245 James D. Kopernak, Cox Simpson & Bennett, Jackson, James H. Powell, III, Durant, for appellants.
Barry K. Cockrell, Richard G. Cowart, Watkins Ludlam & Stennis, Mike C. Moore, Atty. Gen., Stephanie L. Ganucheau, Sp. Asst. Atty. Gen., Arthur C. Sharpe, Jr., Jackson, for appellee.
En Banc.
*246 ROBERTSON, Justice, for the Court:

I.
Today's appeal arises from a chancery court's refusal to enjoin administrative authorization and construction of a nursing home in Holmes County, Mississippi. Our core question is whether the state licensing agency respected applicable substantive and procedural standards in issuing the Certificate of Need (CON) to the original applicant. While we doubt anyone would call what was done exemplary process, we cannot say the agency's actions were arbitrary and capricious, nor do we find legally cognizable harm flowing therefrom.
We affirm.

II.
First, the players:
(A) The City of Durant is a municipal corporation organized and existing by virtue of the laws of the State of Mississippi, lying on the eastern side of Holmes County, Mississippi. The City of Durant was one of the Plaintiffs below and is one of the Appellants here.
(B) W.B. Johnson, John W. Glover, Swisher Hobbs, Faye Durham, Miles Ray, Frank Cox, Henry L. Mitchell, Earl Dodd Browning, William F. Irby, Wiley Humphreys, Margaret Lomax, and Daisy Glover, all adult resident citizens of eastern Holmes County, Mississippi, residing in the Durant and West Communities. Each of these individuals was a Plaintiff below and is an Appellant here.
(C) Humphreys County Memorial Hospital/Extended Care Facility (HCMH/ECF) is a publicly-owned hospital and health care provider based principally in Belzoni, Mississippi. HCMH/ECF is the applicant holding a CON and now a license to operate the skilled nursing facility in dispute. HCMH/ECF was a Defendant below and is one of the Appellants here.
(D) The Mississippi State Department of Health (MSDH) is an administrative agency of the State of Mississippi organized and existing under the laws of this state. MSDH was a Defendant below and is one of the Appellants here.
(E) The Mississippi Health Care Commission (MHCC) was once an administrative agency of the State of Mississippi organized and existing under the laws of this state. Miss. Laws ch. 451, §§ 3(1), et seq. (1979). Prior to July 1, 1986, MHCC administered the Certificate of Need (CON) program.[1] After July 1, 1986, state law transferred the CON program to MSDH and the State Health Officer, Dr. Alton B. Cobb, and thereupon abolished MHCC. See Miss. Code Ann. § 41-7-175 (Supp. 1990).
The bone of contention  or plum, depending upon one's point of view  is the legal authority to provide skilled nursing home services[2] in the Holmes County area. Prior to 1986, Holmes County was one of a number of our counties which had no nursing home. For the first half of the 1980's, the state, for reasons beyond our ken or concern, had by law imposed a moratorium on the building of new nursing home facilities. One exception allowed MHCC to issue CON's, upon proper showings, to any existing health care facility with fewer than sixty (60) skilled nursing beds:
... for making additions to or expansion or replacement of the existing facility, in *247 order to increase the number of its beds to not more than sixty (60) beds.
Miss. Code Ann. § 41-7-191(2) (Supp. 1985).
Prior to the time in issue HCMH/ECF owned and operated a seven-bed, extended care, skilled nursing unit as a part of its general facilities in Belzoni. On November 27, 1985, HCMH/ECF applied to the MHCC for a CON to build and operate a skilled nursing facility in Lexington, Holmes County, Mississippi.[3] HCMH/ECF perceived a substantial need in a three-county area  Humphreys, Holmes and Carroll  and offered to address that need. HCMH/ECF amended its application on several occasions so that, in the end, it sought a CON to "replace" its existing facility with a sixty-bed skilled nursing home in Lexington, upon the completion of which HCMH/ECF would close the seven-bed unit in Belzoni. On May 19, 1986, MHCC approved HCMH/ECF's application as amended, and issued CON Number 0491. The CON originally set a May 18, 1987, deadline for HCMH/ECF to begin construction and later enlarged that limit by six months to extend through November 17, 1987.
George Jobe, Chief of the MSDH's Planning and Resource Development Division, explained the notice given. In 1985 when HCMH/ECF first submitted the CON application, Jobe served as the Chief of the Resource Development Division. Jobe stated MHCC issued written notice that it was beginning review of the CON application. Copies of the notice were sent to the fifteen hospitals in HCMH's service area, two located in Holmes County[4]. With the exception of the two hospitals in Holmes County, no other person in Holmes County received actual notice. Notice[5] was published in The Delta Democrat-Times, a newspaper of general circulation in the HCMH's service area. Moreover, the two hospitals in Holmes County received copies of MHCC's May 1st newsletter which contained reports of the Department's activities.[6]
*248 It appears that in prior years the City of Durant[7] had shown an interest in establishing a nursing home facility in the Holmes County area. As the city was not a then-current operator, its hands were tied during the statutory moratorium. In 1987, the Legislature amended the law to give MSDH broader authority to issue CON's for nursing home facilities. See Miss. Laws ch. 515, § 6 (1987). The new enactment, however, limited each county to sixty (60) beds and said MSDH could not issue a new CON if there were in the county an outstanding CON authorizing not less than sixty (60) beds where construction was begun prior to November 30, 1987.
On September 1, 1987, the City of Durant applied to MSDH for a CON to construct a sixty-bed nursing home in Durant. Upon doing so, the City learned of HCMH/ECF's outstanding CON. The City determined to pursue its own CON application but to wage war as well on a second front, contesting HCMH/ECF's right to provide nursing home services in Holmes County. The City soon realized that the normal route for such a contest  an appeal to the Chancery Court  was entailed by a thirty-day limitations period following the issuance of the CON. By this time the clock was some seventeen months past May 19, 1986, the date of HCMH/ECF's CON.
*249 On October 30, 1987, the City of Durant and a number of persons residing in eastern Holmes County commenced this civil action by filing their complaint in the Chancery Court of Holmes County. In their complaint, Plaintiffs sought an injunction prohibiting HCMH/ECF from constructing the proposed nursing home facility in Lexington and prohibiting MSDH from denying the City of Durant's CON application.
On November 2, 1987, the Chancery Court denied Plaintiffs' motion for a temporary restraining order. See Rule 65(b), Miss.R.Civ.P. The Court immediately set the matter for hearing on Plaintiffs' prayer for a preliminary injunction, and on November 16, 1987, the Court issued a bench opinion not only denying the preliminary injunction, but dismissing the complaint on its merits. See Rule 65(a)(2), Miss.R.Civ.P. On December 11, 1987, the Court entered final judgment thereon, and Plaintiffs have timely perfected an appeal.
Shortly thereafter, on December 17, 1987, MSDH denied the City of Durant's application for a CON. Neither the City nor any other party appealed to the Chancery Court, a point whose importance will presently appear.

III.
The MSDH and HCMH/ECF first argue that the controversy is moot and that this Court should dismiss the appeal. They point to the undisputed fact that HCMH/ECF has long since completed the nursing home facility in Lexington, that the facility has been licensed by the Department, and that it is fully operational. They gild the lily by reminding us that Humphreys County has issued revenue bonds in the amount of $2,000,000.00 as a part of the project's permanent financing. They note that the City made no effort to obtain a stay pending appeal. See Rule 62, Miss.R.Civ.P.; Rule 8, Miss.Sup.Ct.Rules.
In Fordice v. Warren County Bd. of Education, 245 So.2d 201 (Miss. 1971), the Warren County School Board advertised and received bids for construction of a school gymnasium. The school board awarded the contract to Reed-Joseph Company, which built the gymnasium to the board's satisfaction. The school board then began using the facility. After the project had been completed, Fordice, the next lowest bidder, brought suit seeking to have the contract between the Board and the builder declared void and to secure an injunction requiring, inter alia, the school board to have new plans prepared. This Court held the action moot, noting the case did not involve a question of fraud or injury to the public. Fordice, 245 So.2d at 203.
Similarly, in Renal Care of Illinois, Inc. v. Illinois Health Facilities Planning Bd., 159 Ill. App.3d 881, 111 Ill.Dec. 786, 513 N.E.2d 32 (1987), a party sought to enjoin the construction and operation of a kidney dialysis facility, allegedly built in violation of certain regulations. Since the facility was already built and in operation, the court held the matter moot. Renal Care, 111 Ill.Dec. at 787-88, 513 N.E.2d at 33-34.
These decisions notwithstanding, we regard the motion without merit, and the reason this must be so may be simply put. A litigant should not be allowed to take advantage of the delay inevitably and lamentably attendant upon the appellate process to render moot what would otherwise be a live and justiciable controversy. In the best of all worlds, this Court and all litigants would prefer that we hear and decide appeals immediately upon filing. Plaintiffs bear no blame because we are only today adjudging the appeal they perfected on February 16, 1988. Suffice it to say that, where an appellant's original action was timely and where he has promptly prosecuted his appeal, the completion of an act based upon improper authority does not legitimate the act or render the legal issues moot. See The Ohio Oil Company v. Fowler, 232 Miss. 694, 100 So.2d 128, 131, 132 (1958); California Company v. State Oil and Gas Board, 200 Miss. 824, 27 So.2d 542, 547 (1946). Fordice is no authority otherwise. There, the disgruntled bidder did not sue until the gymnasium had been completed. Here, Plaintiffs sued within a reasonable time of learning of the outstanding CON and while HCMH/ECF's construction was in its infancy.
*250 It is true that the complaint focused upon HCMH/ECF's CON and its commencement of construction. The complaint at its heart challenges HCMH/ECF's authority to operate the Holmes County facility and MSDH's power to confer that authority. The CON is but the initial token of that authority which now takes the form of a license to operate. That the evidence of HCMH/ECF's authority may have metamorphosed from CON to license hardly renders moot the core controversy.

IV.
In its bench opinion, the Chancery Court held that the correct procedure for attacking
the issuance of a Certificate of Need is through the administrative agency whose responsibility it is to issue same with the safeguard of the appeal procedure, timely followed, as provided by Mississippi Code of 1972, Annotated, Section 41-7-171, et seq., which in this case was not followed.
The Court went on to dismiss the complaint. If we perceive its action correctly, the Court held it lacked jurisdiction by reason of the City's failure to employ the administrative process.
The point warrants little discussion. Plaintiffs' complaint demands injunctive relief. Our Chancery Courts have long had authority to hear and adjudge such claims. Notwithstanding, the Chancery Court dismissed the complaint, holding Plaintiffs' proper recourse was through the administrative process. By this ruling the Court effectively claimed it was without subject matter jurisdiction. However, examining the complaint, the City charged the failure to give proper notice precluded use of the administrative process. Without the administrative process, no adequate remedy existed in law. Add to this the City's demand for injunctive relief and the rule that the face of the complaint and its well pleaded allegations are what courts look to when deciding whether they have authority to act at all, see Miss. Const. Art. 6, § 159(a) and (f) (1890); Miss. Code Ann. § 9-5-81 (1972); Common Cause of Mississippi v. Smith, 548 So.2d 412, 414-15 (Miss. 1989); American Fidelity Fire Insurance Co. v. Athens Stove Works, Inc., 481 So.2d 292, 296 (Miss. 1985), and we see that Plaintiffs properly invoked the Chancery Court's equity jurisdiction, and that dismissal on this ground was improper. See Hood v. Mississippi Department of Wildlife Conservation, 571 So.2d 263, 266 (Miss. 1990).
That the Chancery Court may have had jurisdiction hardly means Plaintiffs held any rights that had been offended, or were otherwise entitled to relief, or even that Plaintiffs could get to first base. We now turn to these matters.

V.
Plaintiffs next argue that the Chancery Court erred when it denied their motion for a preliminary injunction. Plaintiffs are swimming uphill when they raise such an issue on appeal.
An application for a preliminary injunction is a matter committed to the Chancery Court's sound discretion. See Rule 65(a), Miss.R.Civ.P. Following other jurisdictions, we have accepted that the court considering such an application must weigh and balance an assortment of equities and, in the end, make at least four findings, to wit:
(1) There exists a substantial likelihood that plaintiff will prevail on the merits;
(2) The injunction is necessary to prevent irreparable injury;
(3) Threatened injury to the plaintiffs outweighs the harm an injunction might do to the defendants; and
(4) Entry of a preliminary injunction is consistent with the public interest.
See, e.g., Concerned Women For America, Inc. v. Lafayette County, 883 F.2d 32, 34 (5th Cir.1989); Tanglewood East Homeowners v. Charles-Thomas, Inc., 849 F.2d 1568, 1576 (5th Cir.1988); Henry v. First National Bank of Clarksdale, 595 F.2d 291, 302 (5th Cir.1979); Stack v. Tenneco, Inc., 641 F. Supp. 199, 202 (S.D.Miss. 1986); Goldstein v. Allain, 568 F. Supp. 1377, 1384 (N.D.Miss. 1980); Sierra Club v. Bergland, 451 F. Supp. 120, 131 (N.D.Miss. 1978).
*251 Plaintiffs' application falls far short. There was hardly a likelihood that Plaintiffs would prevail on the merits, a matter to which we will shortly turn. The injunction was not necessary to prevent irreparable injury. Indeed, the injunction may have caused irreparable injury, had it issued, in the sense that the people of the area around Holmes County who were in need of nursing home services may have encountered an even further delay in availability of these services. For this reason, entry of the injunction would hardly have been consistent with the public interest. The point for the moment is simply that we cannot say the Chancery Court abused its discretion when it denied the City's application for a preliminary injunction.

VI.
On the merits, Plaintiffs urge that MHCC was without authority to issue the CON to HCMH/ECF. The tenor of the argument is important. The City insists upon its "right to own and operate a nursing home in Holmes County." Appellants' Brief, at page 15. Plaintiffs assert "the fundamental right of the people of Holmes County, Mississippi" to own and operate their own nursing home. Appellants' Brief, at page 16. The problem with the argument is that it is unhinged from law. Rights are a function of rules satisfying the criteria for legal validity. Suffice it to say that Plaintiffs point to no such rule, creating and vesting in them any right to own and operate a nursing home.
HCMH/ECF and MSDH, by way of contrast, eschew rhetoric for law as they defend the legality of the disputed CON. They argue that MHCC and thereafter MSDH have at all times acted within administrative authority state law has conferred upon them. They have much on their side, for in such a setting, law limits the scope of judicial review.
We have today a matter of statutory interpretation, committed initially to an agency within the executive department of the government, here [the Department]. Notwithstanding our ordinarily de novo review of questions of law, we have accepted an obligation of deference to agency interpretation and practice in areas of administration by law committed to their responsibility. This duty of deference derives from our realization that the everyday experience of the administrative agency gives it familiarity with the particularities and nuances of the problems committed to its care which no court can hope to replicate.
Gill v. Mississippi Dep't of Wildlife Conservation, 574 So.2d 586, 593 (Miss. 1990).
Plaintiffs' challenge is answered by a simple reading of the statute, which at the time provided an exception from the statutory moratorium on new nursing home facilities. That exception read:
... the commission may, if the State Health Plan reflects a need, issue a certificate of need to any such defined health care facility which has fewer than sixty (60) beds, for making additions to or expansion or replacement of the existing facility, in order to increase the number of its beds to not more than sixty (60) beds... .
Miss. Code Ann. § 41-7-191(2) (Supp. 1985).
Restated, the statute conferred upon MHCC authority to empower a health care provider operating a facility with fewer than sixty beds to make additions to, expand or replace that existing facility in order to increase the number of beds to sixty. MHCC construed HCMH/ECF's amended application as one for a CON to replace its existing facility, and MHCC acted well within its authority when it did so.
MHCC considered the fact that the replacement would be made in Lexington rather than in Belzoni beside the point. Nothing in the statute prohibits a provider domiciled in one county from applying for and receiving a CON to offer a health care service in another county. Giving the statute this reading, MHCC issued the CON. This is the sort of statutory interpretation by an administrative agency we have long accepted it our duty to respect. See, e.g., CIVIC v. Wayne County Board of Education, 574 So.2d 619, 622-23 (Miss. 1990); Grant Center Hospital of Mississippi, Inc. *252 v. Health Group of Jackson, Mississippi, Inc., 528 So.2d 804, 810 (Miss. 1988).
Duties of deference aside, the CON issued to HCMH/ECF meets the statutory criteria. The State Health Plan then in effect reflected a need for nursing home beds in Holmes County. HCMH/ECF was one of the defined health care facilities entitled to a CON, if it met all other requisites. See Miss. Code Ann. § 41-7-173(h)(iv) (Supp. 1985). HCMH/ECF had fewer than sixty nursing home beds and proposed to increase the number of its beds to sixty beds. This was accomplished through the expansion and replacement of the HCMH/ECF's skilled nursing facility, as authorized by the CON. Plaintiffs' lack-of-authority argument fails utterly.

VII.
Finally, Plaintiffs argue process. They say MHCC failed to give proper notice of HCMH/ECF's application and that this alone renders the CON unlawful and void. Plaintiffs advance this as one of the reasons they had no choice but to repair to Chancery Court for injunctive relief, that they had no knowledge or reason to know of the already extant CON until the City made its own application for a nursing home CON.
The point bears a special context. The statutory scheme provides an administrative remedy followed by judicial review. Absent extraordinary circumstances, we regard such procedural remedies a party's exclusive route of redress for administrative grievances. Bulloch v. City of Pascagoula, 574 So.2d 637, 642 (Miss. 1990); Hood v. Department of Wildlife Conservation, 571 So.2d 263, 267-69 (Miss. 1990). The City of Durant on September 1, 1987, filed with MSDH an application for a CON to provide in Holmes County a sixty-bed nursing home. On December 17, 1987, MSDH denied the application. Thirty days came and went, and the City perfected no appeal to the chancery court. Right or wrong, MSDH's decision is final. Hood v. Department of Wildlife Conservation, 571 So.2d at 269. The City is reduced to a defensive posture, and a weak one at that. Its own CON application concedes the need. That application lost, the City is seen a veritable dog in the manger: if we can't have the CON, no one should.
Still, we must address directly Plaintiffs' lack of notice claim. Recall that in 1985 and 1986, neither the City of Durant nor any other Plaintiff held any legally protected right to provide a skilled nursing facility in Holmes County. The City's earlier de facto interest does not generate a right, title or interest adequate that it enjoy due process protection. Compare, e.g., Harden v. State, 547 So.2d 1150, 1151-52 (Miss. 1989); and Mississippi Power Co. v. Goudy, 459 So.2d 257, 263 (Miss. 1984). Such right to notice as Plaintiffs may have enjoyed was wholly a function of statute. Cf. CIVIC v. Wayne County Board of Education, 574 So.2d at 623-25.
When we turn to the applicable statute, we find, in pertinent part, as follows:
The State Department of Health shall adopt and utilize procedures for conducting certificate of need reviews. Such procedures shall include, inter alia, the following: (a) written notification to affected persons of the beginning of a review; (b) written notice to affected persons of the proposed schedule for the review; (c) written notification of the period within which a public hearing during the course of the review may be requested in writing by one or more affected persons, such request to be made within twenty (20) days of said notification; and (d) the manner in which notification will be provided of the time and place of any hearing so requested... .
Miss. Code Ann. § 41-7-197(1) (Supp. 1985). We do not doubt that Plaintiffs are "affected persons."[8] The term includes certain *253 health care facilities providing or intending to provide a similar service, third-party payers who reimburse health care facilities located in the service area, as well as certain other persons and entities. What is important is that the statute, Section 41-7-197(1) does not mandate actual written notice to "affected persons," only that MSDH should adopt procedures for such notice. Under this directive, the MSDH adopted regulations governing notification to affected persons. Specifically, the regulations provided that notification to members of the public and third-party payors "may be provided through newspapers and public information channels." The City of Durant and each other Plaintiff are members of the public within this regulation. The same regulation provides that notification "to all other affected persons must be by mail, and may be part of the [Mississippi Health Care Commission] newsletter."
It is important to recall that MSDH had divided the state into nine Long Term Care Planning Districts. Holmes and Humphreys Counties, at all times relevant hereto, were in District III, along with Bolivar, Carroll, Washington, Sunflower, Leflore, Montgomery and Attala Counties. The daily newspaper having the largest circulation in District III was The Delta Democrat-Times, published in Greenville, Mississippi. MSDH sent notice of HCMH/ECF's CON application to The Delta Democrat-Times.
In view of the applicable statute and regulation, we find no merit in Plaintiffs' argument that each resident of Holmes County was entitled to individual notice of the HCMH/ECF's CON application. There is no statute or regulation which directs such notice, the statute merely directs that MSDH adopt procedures for notifying affected persons. MSDH adopted such procedures, including a provision that affected persons who are members of the public "may be provided [notification] through newspapers and public information channels." MSDH complied with this provision through a news release to The Delta Democrat-Times in Greenville, Mississippi.
There remains the final question whether MHCC's regulation offended the statute in a way we may find arbitrary and capricious in its failure to decree actual notice to all affected persons. We accept that other district health care providers should receive actual notice, for obvious reasons, but members of the public like today's Plaintiffs and other governmental entities like the City of Durant would seem altogether differently situated. These parties have no property right or other legal entitlement in the premises, as we have noted. They have no investment issuance of a new CON might put at risk. Perhaps they may perceive a public need and, as here, desire to fill it, but surely that interest is satisfied where the facility is built and the service provided, no matter who the provider may be.
There is a more pragmatic point. If Plaintiffs' view be accepted, we must per force hold that every member of the general public in Holmes County was entitled to actual written notice. Such a process would be impossible to accomplish, its costs greatly exceeding its benefits, nightmarish in all respects. Moreover, the holder of a CON and thereafter a license to operate could never be sure its authority would not be attacked by some malcontent member of the general public claiming he was an "affected person" within Section 41-7-173(a) who had not received actual written notice. Such a process would put the project's financing at perennial risk as well. Proof of service of actual written notice on every affected person would likely prove insuperable though all other problems be resolved.
In sum, we would have thought it folly if MHCC  and thereafter MSDH  had inaugurated a regimen of actual written notice to each affected person. In no sense may we say these agencies, in implementing *254 Section 41-7-197(1)'s directive, acted arbitrarily or capriciously or without authority of law.
AFFIRMED.
ROY NOBLE LEE, C.J., DAN M. LEE, P.J., SULLIVAN and PITTMAN, JJ., concur.
McRAE, J., dissents with separate written opinion, joined by HAWKINS, P.J., and BANKS, J.
PRATHER, not participating.
McRAE, Justice, dissenting:
I respectfully dissent. Because the Mississippi Health Care Commission ("MHCC") failed to give proper notice, I would hold the certificate of need void.
Miss. Code Ann. § 41-7-197(1) (Supp. 1985) directs the MHCC to adopt procedures for conducting certificate of need reviews. It provides for notice to members of the public residing in the service area by means of newspapers or public information channels.
When a statute provides for publication of notice in a newspaper, that publication must be made in compliance with Miss. Code Ann. § 13-3-31 (Supp. 1990). Thus, publication must be made in a newspaper which "[m]aintains a general circulation predominately to bona fide paying subscribers within the political subdivision within which publication of such notice is required." The statute specifies that the "term `general circulation' means numerically substantial, geographically widespread, demographically diversified circulation to bona fide paying subscribers." Moreover, it states clearly that "[in] no event shall the term `general circulation' be interpreted to require that legal notices be published in a newspaper having the greatest circulation." The legislative intent of the statute, as indicated in the preamble to Chapter 479 of the Laws of 1976, is "to the end that effective general notice to the public is given by such publication." Publication of a notice impacting both the government and the citizenry of Holmes County in The Delta Democrat Times clearly fails to meet this mandate or the language of the statute.
This Court has not defined the term "general circulation," Estate of Myers v. Myers, 498 So.2d 376 (Miss. 1986), nor has it addressed the issue of whether a particular newspaper publication met the statutory criteria. Other jurisdictions which have had occasion to interpret analogous statutes may offer some guidance to looking beyond the plain meaning of the language of § 13-3-31. See Annotation, What Constitutes Newspaper of "General Circulation" Within Meaning of State Statutes Requiring Publication of Official Notices and the Like in Such Newspaper, 24 A.L.R.4th 822.
In Great Southern Media, Inc. v. McDowell, 304 N.C. 427, 284 S.E.2d 457 (1981), the North Carolina Supreme Court sought to determine whether the weekly newspaper in which a county placed its notices of tax lien sales met the statutory criteria for a newspaper of "general circulation" within the taxing unit. After surveying decisions from other jurisdictions which have interpreted statutes similar to the North Carolina statute (and to § 13-3-31), the Court found that the term "general circulation" had been construed to have both qualitative and quantitative components. Based on its research, the Court then formulated a four-pronged test to determine whether a given newspaper could be found to be in "general circulation:"
First it must have a content that appeals to the public generally. Second, it must have more than a de minimus number of actual paid subscribers in the taxing unit. Third, its paid subscriber distribution must not be entirely limited geographically to one community, or section of, the taxing unit. Fourth, it must be available to anyone in the taxing unit who wishes to subscribe to it.
Id. at 468.
A most liberal application of this test to the facts further compels us to find that The Delta Democrat Times is not a newspaper of "general circulation" in Holmes County. The newspaper is printed in the City of Greenville, in Washington County, *255 two counties west of Holmes County, and while it carries items of general interest, its focus is on news of interest to that community, not to residents of Holmes County, who are well-served by newspapers there. Testimony by George Booker, City Clerk and Tax Collector for the City of Durant, as well as circulation figures indicate that there are less than a de minimus number of paid subscribers to The Delta Democrat Times in Holmes County,[1] thus making the third factor moot. Even assuming, arguendo, that the political subdivision were defined as Long Term Care Planning District III, the newspaper serves less than half of the counties in that district.
Although I agree that it would be pure folly to provide every member of Holmes County with actual written notice, MHCC fell short of meeting its statutory responsibility, as well as the due process requirements implied in § 13-3-31, by publishing notice of the application in a newspaper not in "general circulation" in Holmes County.
HAWKINS, P.J., and BANKS, J., join this dissent.
NOTES
[1] The history of the CON program in Mississippi has been recounted in prior opinions. See, e.g., Mississippi State Department of Health v. Southwest Mississippi Regional Medical Center, 580 So.2d 1238 (Miss. 1991); Magnolia Hospital v. Mississippi State Department of Health, 559 So.2d 1042 (Miss. 1990); Melody Manor Convalescent Center v. Mississippi State Department of Health, 546 So.2d 972 (Miss. 1989); Grant Center Hospital of Mississippi, Inc. v. Health Group of Jackson, Mississippi, Inc., 528 So.2d 804 (Miss. 1988).
[2] We refer to services provided in a "skilled nursing facility" which has been defined by law to mean

... an institution or a distinct part of an institution which is primarily engaged in providing to inpatients, skilled nursing care and related services for patients who require medical or nursing care or rehabilitation services for the rehabilitation of injured, disabled or sick persons.
Miss. Code Ann. § 41-7-173(h)(iv) (Supp. 1985).
[3] Holmes County lies to the east of Humphreys County. Lexington is some 35 non-avian miles east of Belzoni.
[4] One of the Holmes County hospitals is situated in Durant. The fifteen notified include:

Bolivar County Hospital North Sunflower Co. Hospital Mound Bayou Community Hospital Shelby Community Hospital South Sunflower Co. Hospital Greenwood-Leflore Hospital Tyler Holmes Memorial Hospital Montfort Jones Hospital District Two Community Hospital Holmes Co. Hospital Humphreys Co. Memorial Hospital Delta Medical Center King's Daughters Hospital S. Washington Co. Hospital W.S. Witte Memorial Hospital
[5] The content of this notice is:

MISSISSIPPI HEALTH CARE COMMISSION 2688 Insurance Center Drive Jackson, Mississippi 39216
NEWS RELEASE
The Mississippi Health Care Commission has received a CON Review application submitted by Humphreys County Memorial Hospital/ECF located in Belzoni, Mississippi. The intent of this proposal is to expand extended care beds from 7 to 60 beds in Lexington, Mississippi at an estimated cost of $1,850,000.
Any person may request the Mississippi Health Care Commission to hold a public hearing on this application. Any person requesting such hearing should submit the request in writing to the Mississippi Health Care Commission, 2688 Insurance Center Drive, Jackson, Mississippi 39216. To be effective the request must be received by the Commission on or before January 5, 1986.
For more information, contact the Resource Development Branch of this office at 981-6880.
[6] Not only did these hospitals receive notice of the proposal, their administrators addressed letters in support of HCMH/ECF's CON application. These letters bear repetition as well for their content.
 DISTRICT TWO COMMUNITY HOSPITAL
 603 N. West Avenue
 Durant, Mississippi 39063
 Telephone (601) 653-3881
 March 18, 1986
 Mr. Alvin Word
 Humphreys County Memorial Hospital
 P.O. Box 510
 Belzoni, MS 39038
 Dear Mr. Word:
 I am writing this letter in reference to the drastic
 need for the availability of nursing home beds in our
 area. Unfortunately, we are located in a county that
 is geographically large and populated with a high
 percentage of both poor and elderly citizens.
 During the past twelve months we have been able to
 place some thirty patients in nursing homes. Some of
 these placements occured (sic) after waiting periods
 of more than 90 days and, of course, they were all
 out of Holmes County.
 Today, in our facility we have 5 patients awaiting
 nursing home beds. Additionally, we have knowledge of
 another twenty-five or so in the surrounding
 community who are awaiting placement. There is no
 accurate figure of the number of people who would
 take advantage of nursing home beds were they
 available. We can only comment on those who have
 contacted either the hospital or their physician.
 During the past year or so we have sent 30 patients
 back into home settings because of the lack of space
 available in nursing homes in the surrounding area.
 Oftentimes, this created hardships on both families
 and patients. The vast majority of our nursing home
 candidates are recipients of Medicare or Medicaid
 benefits that would enable them to afford a nursing
 home stay.
 The availability of Swing-bed Programs have helped
 with the short-term care of patients, but does not
 address the need for long-term health care for our
 elderly. The only solution to this complex problem is
 to make beds available through the nursing home
 system. Sincerely,
 /s/ Joe McLellan, R.Ph.
 Administrator
 * * * * * *
 METHODIST HOSPITAL
 OF MIDDLE MISSISSIPPI
 1 Bowling Green Street
 Lexington, Mississippi 39095
 XXX-XXX-XXXX
 March 19, 1986
 Mr. Alvin Word, III, Administrator
 Humphrey's (sic) County Memorial Hospital
 P.O. Box 510
 Belzoni, Mississippi 39038
 Dear Mr. Word:
 This letter is to provide support to your efforts to
 obtain a CON for additional nursing home beds.
 Over the past years, we have experienced great
 difficulty in placing and securing beds for potential
 nursing home patients. As you know, we do not have a
 nursing home in Holmes County. Therefore, all nursing
 home patients must leave our county for placement.
 Because of the shortage of nursing home beds in our
 surrounding area, many of our patients must be
 discharged home to await placement while others must
 extend their hospitalization until a nursing home
 vacancy occurs.
 During the past 12 months, we have prepared paperwork
 on 20 patients awaiting nursing home placement. Only
 six of these patients were transferred directly from
 our hospital to a nursing home. All but one of these
 six were finally placed in a nursing home in Jackson
 some 60 miles from their residence. Of the 20
 patients who were in need of nursing home placement,
 all of the patients were Medicaid recipients who were
 in need of skilled nursing care.
 At present, we have three patients who are in need of
 nursing home placement. We have been unable to locate
 a vacant bed for these patients.
 Because of our past problems and existing need to
 place patients in a nursing home setting along with
 no available beds in Holmes County, I fully support
 your efforts to obtain CON approval for additional
 long-term beds.
 If I can be of further assistance in your efforts,
 please feel free to contact me at any time.
 Sincerely,
 METHODIST HOSPITAL OF MIDDLE MISSISSIPPI
 /s/ David Jakes
 Administrator

[7] The City of Durant lies some 13 miles east of Lexington, still in Holmes County.
[8] Miss. Code Ann. § 41-7-173(a) (Supp. 1985) defines "affected persons" as follows:

(a) "Affected person" means (i) the applicant; (ii) a person residing within the geographic area to be served by the applicant's proposal; (iii) a person who regularly uses health care facilities HMO's located in the geographic area of the proposal which provide similar service to that which is proposed; (iv) health care facilities and HMO's which have, prior to receipt of the application under review, formally indicated an intention to provide service similar to that of the proposal being considered at a future date; (v) third-party payers who reimburse health care facilities located in the geographical area of the proposal; or (vi) any agency that establishes rates for health care services or HMO's located in the geographic area of the proposal.
[1] The Delta Democrat Times has a daily circulation of approximately 14,282, with the bulk of its sales in Washington County. Of the six counties for which the newspaper keeps circulation figures, only four, Washington, Bolivar, Humphreys and Sunflower, are within District III. Only twenty-five (25) paid subscriptions are listed outside of the newspaper's circulation area. The paper maintains only a negligible number of newspaper racks outside of Washington County. Holmes County is not considered part of the paper's circulation area.