# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2017-CC-00399-SCT

*MEMORIAL HOSPITAL AT GULFPORT AND
SINGING RIVER HEALTH SYSTEM*

*v.*

*DAVID J. DZIELAK, Ph.D., IN HIS OFFICIAL
CAPACITY AS EXECUTIVE DIRECTOR OF THE
DIVISION OF MEDICAID, OFFICE OF THE
GOVERNOR, AND THE DIVISION OF
MEDICAID, OFFICE OF THE GOVERNOR,
STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 02/22/2017 |
| TRIAL JUDGE: | HON. DENISE OWENS |
| TRIAL COURT ATTORNEYS: | CECIL MAISON HEIDELBERG |
| | ANDREW SETH ROBBINS |
| | CHARLES LUBAND |
| | JANET McMURTRAY |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANTS: | CECIL MAISON HEIDELBERG |
| | ANDREW SETH ROBBINS |
| ATTORNEYS FOR APPELLEES: | JANET McMURTRAY |
| | LAURA L. GIBBES |
| | DION JEFFERY SHANLEY |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 07/26/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**RANDOLPH, PRESIDING JUSTICE, FOR THE COURT:**

¶1.    Memorial Hospital at Gulfport and Singing River Health System ("Hospitals") filed

a Complaint and Notice of Appeal in the Chancery Court of the First Judicial District of

Hinds County, appealing and seeking judicial review of a June 24, 2016, administrative decision which found the Division of Medicaid's ("DOM's") 2014 Fiscal Year Methodology "correctly interprets statutes and regulations and is neither arbitrary or capricious." The chancellor affirmed the decision of DOM. Finding no evidence in the record before us that DOM failed to comply with Sections 43-13-117 and 43-13-145 in allocating and distributing supplemental payments to Mississippi hospitals, we affirm.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

¶2. In Fiscal Year 2014 ("FY 2014"), DOM distributed more than $700 million in supplemental Medicaid payments to aid 110 hospitals which provide hospital services for Mississippi Medicaid and uninsured patients. DOM's supplemental Medicaid payments are comprised of two categories: (a) Disproportionate Share Hospital ("DSH") payments,[1] and (b) upper payment limit ("UPL") hospital payments,[2] which should be disbursed pursuant to a formula consistent with both state and federal law (the "FY 2014 Methodology"). A federal law, known as the Omnibus Budget Reconciliation Act ("OBRA"), sets a cap on the amount each DSH-eligible hospital may receive in supplemental payments, once a DSH payment is received by that hospital. This is known as the "OBRA limit." The OBRA limit for a hospital is the difference between the total costs for serving Medicaid and uninsured patients less the

---

[1] The DSH payment is designed to help hospitals cover uncompensated or unmet costs of treatment for uninsured or Medicaid patients. Only DSH-eligible hospitals receive these payments. DSH payments are cost-based.

[2] The UPL is the gap between what Medicaid actually paid hospitals for its services and what Medicare would have paid for the same services. UPL is distributed to all hospitals. UPL payments are service-based and distributed uniformly based on inpatient payment.

2

total Medicaid payments made by or on behalf of Medicaid beneficiaries and the uninsured. Once a DSH-eligible hospital receives a DSH payment, any additional supplemental payments, whether UPL or DSH, may not exceed its OBRA limit. *See* 42 U.S.C.A. § 1396r-4. The UPL is not capped by the OBRA limit, as long as no DSH payments are made to that hospital.

¶3. The following history, taken from the Hearing Officer's recommendation, was developed during the administrative hearing:

> In 2008, DOM and the legislature looked at restructuring the way the DSH and UPL monies were being distributed with the goal of maximizing the use of available federal funds. In order to do this, the Governor appointed an Advisory Board that consisted of industry members and included input from DOM. The Board was to study various methods of paying DSH and UPL and recommend a method of payment to the legislature.

> The Board met several times and in February 2010, it considered a model proposed by DOM and a model proposed by the Healthcare Management Association (HMA), which had been retained by the Mississippi Hospital Association.

> The HMA model paid the UPL money first, while DOM proposed paying DSH first. Which payment is made first is significant because UPL money was not limited by OBRA while DSH payments were limited by OBRA. There were Board members who did not believe that UPL could be paid first under federal requirements. Accordingly, several Board members and Kevin Londeen at Myers & Stauffer met with [the Center for Medicare and Medicaid Services] ("CMS") to discuss concerns over the payment models. The Board specifically asked CMS if UPL could be paid first, even if it meant that the UPL payment would exceed the OBRA limit. The Board recognized that making the UPL payment first would result in some hospitals being paid in excess of their OBRA limits and thus not receiving an additional DSH payment. CMS said that a model that allowed this to occur was perfectly fine.

> Gary Marchand, who represented Memorial, was a member of the Board. After meeting with CMS, the Board then voted to recommend the HMA model rather than the DOM model. Mr. Marchand abstained rather than

3

voting against the HMA model which paid UPL first. The legislature then adopted the Board's recommendation into the Mississippi statutes adopting the HMA model as HB71,[3] or Section 43-13-145.

¶4.     After the Legislature adopted H.B. 71 in 2009, it adopted similar statutes each year thereafter, including Fiscal Year 2014, that paid UPL and DSH in this same way.[4] In 2013-2014, DOM began looking at different models in the event the Legislature changed the method of making the calculations and distributions. DOM hired a consultant to propose changes to eliminate the need to exhaust the UPL funds first. However, those proposed changes were rejected by the Senate, and the existing requirements of Mississippi Code Section 43-13-145 for uniform percentages were retained. DOM used this same model to distribute UPL payments before DSH payments in 2011, 2012, and 2013, and the Hospitals did not appeal their payments in these years.

¶5.     In 2014, Singing River received a DSH payment of $18,073,635.22 and a UPL payment of $17,928,972.47, for a total of $36,002,607.69. Its OBRA limit was $45,611,951, a difference of approximately $9,000,000. Memorial received a DSH payment of $19,542,669.29 and a UPL payment of $23,646,206.03, for a total of $43,188,875.32. Its OBRA limit was $54,779,800, a difference of approximately $11,000,000.

¶6.     The Hospitals alleged that similarly situated hospitals received Medicaid supplemental payments well in excess of their costs for providing hospital services to Medicaid and

---

[3] House Bill 71 was enacted during the 2009 second extraordinary session of the Legislature. *See* 2009 Miss. Laws 2d Ex. Sess. ch. 118.

[4] The only relevant changes to the newly adopted statutes were the repeal date and fiscal year inpatient data date. *See* 2012 Miss. Laws ch. 530; 2013 Miss. Laws 2d Ex. Sess. ch. 293; 2014 Miss. Laws ch. 488; 2015 Miss. Laws ch. 483.

uninsured patients. For example, Forrest General Hospital was paid $17,947,943 more than costs for providing hospital services to Medicaid and uninsured patients. The Hospitals argued that the wide shortfalls for some and wide windfalls for others were the result of DOM's failure to follow governing law.

¶7.     The Hearing Officer agreed with DOM that Section 43-13-145 required DOM to exhaust UPL payments prior to making any DSH payments.

> Consequently, the only way to comply with the statutory language is to pay UPL first and distribute DSH second because of the requirement that the exhaustion of UPL payments, after the initial percentage required by statute are met, be uniform.

> Exhausting UPL payments while keeping the UPL payments uniform as required by Section 43-13-145(10) cannot be accomplished if DSH is paid first because once a hospital meets its OBRA limit with a DSH payment it cannot receive anymore DSH or UPL payment[s].

¶8.     DOM accepted the Hearing Officer's finding that the DSH and UPL payments were properly calculated and distributed to the Hospitals.

¶9.     On appeal, the Hospitals asked the chancellor to declare DOM's actions in implementing the FY 2014 Methodology (1) violated Mississippi law and (2) were (a) arbitrary and capricious, (b) unsupported by substantial evidence, (c) contrary to the manifest weight of the evidence, and/or (d) exceeded the statutory authority of DOM. The Hospitals further requested an injunction requiring DOM to modify its FY 2014 Methodology in accordance with Mississippi law, compelling DOM "to pay DSH to all DSH Eligible Hospitals notwithstanding a hospital's UPL payment and/or further compel Defendants to

5

reimburse Singing River in the amount of $9,609,343 and Memorial in the amount of $11,590,925."

¶10.   The chancellor found that Section 43-13-145 was unambiguous and gave DOM "a pecking order on how to pay UPL so that certain types of hospitals would be paid first before the private hospitals, and government nonstate hospitals were paid their uniform percentage of inpatient payments to exhaust all remaining available UPL funds."

## ANALYSIS

¶11.   The interpretation of a statute presents a question of law, which we review *de novo*. *See **Natchez Hosp. Co., LLC v. Adams Cty. Bd. of Supervisors***, 238 So. 3d 1162, 1163 (Miss. 2018). "On appeal, the Court reviews the decision of an administrative agency to determine whether the decision was supported by substantial evidence, was arbitrary or capricious, was beyond the agency's power to adopt, or was violative of a constitutional or statutory provision." ***King v. Miss. Military Dep't***, No. 2017-CC-00784-SCT, __ So. 3d __, 2018 WL 2731250, at *2 (Miss. June 7, 2018) (citing ***Watkins Dev., LLC v. Hosemann***, 214 So. 3d 1050, 1053 (Miss. 2017)).

¶12.   On its face, the argument presented is quite simple: Did the chancellor err in finding that DOM complied with Sections 43-13-117 and 43-13-145 in allocating and distributing UPL and DSH supplemental payments to Mississippi hospitals?

¶13.   Section 43-13-117 of the Mississippi Code provides a list of fifty-six types of care and services which DOM may choose to offer its beneficiaries or pay its enrolled providers. *See* Miss. Code Ann. § 43-13-117 (Rev. 2015). Unlike most of the services listed, DOM is

required to participate in the federally offered DSH and UPL programs found in subsection (A)(18). Within that same subsection, Section 43-13-145(10) is referenced. Section 43-13-145 sets forth the method of how UPL and DSH supplemental payments are calculated and disbursed. Miss. Code Ann. § 43-13-145 (Rev. 2015).

¶14. The Hospitals argue that DOM's FY 2014 Medicaid reimbursement formula violated Mississippi law, specifically Section 43-13-117(A)(18)(a) of the Mississippi Code. The Hospitals assert that nothing in Subsection 117(A)(18)(b), which established the UPL program, negated Section 117(A)(18)(a)'s mandate that "the division shall" pay DSH to DSH Eligible Hospitals. They further argue that Section 117(A)(18)(a)'s mandate applied "notwithstanding any provision in this section to the contrary."[5]

¶15. Because UPL is service-based and DSH is cost-based, DOM argues that distributing DSH first would take money away from hospitals which earned it (by providing services) and would award it to hospitals which may charge more for those same services. Medicare has

---

[5] The Hospitals cite only partial language from Section 43-13-117(A)(18)(a). The full text which contains the clauses cited is:

> Notwithstanding any other provision of this section to the contrary, as provided in the Medicaid state plan amendment or amendments as defined in Section 43-13-145(10), *the division shall make additional reimbursement to hospitals that serve a disproportionate share of low-income patients and that meet the federal requirements for those payments as provided in Section 1923 of the federal Social Security Act and any applicable regulations.* It is the *intent of the Legislature that the division shall draw down all available federal funds allotted to the state for disproportionate share hospitals. . . .*

Miss. Code Ann. § 43-13-117(A)(18)(a) (Rev. 2015) (emphasis added).

7

moved away from this type of reimbursement.[6] Moreover, UPL payments are distributed to hospitals pursuant to a uniform percentage of inpatient payments. That distribution must remain uniform.

¶16.    DOM urges that it complied with Section 43-13-145 by following the dictates of subsections (a) through (f) and exhausting all UPL monies. DOM then moved to subsection (g) to allocate the DSH funds, thus maximizing both supplemental funds as required by Section 43-13-145(12), which states, "The division shall implement DSH and UPL calculation methodologies that result in the maximization of available federal funds." Miss. Code Ann. § 43-13-145(12) (Rev. 2015).[7]

¶17.    In *City of Natchez v. Sullivan*, 612 So. 2d 1087, 1089 (Miss. 1992), this Court held,

> In considering a statute passed by the Legislature, . . . the first question a court should decide is whether the statute is ambiguous. If it is not ambiguous, the court should simply apply the statute according to its plain meaning and should not use principles of statutory construction. [citations omitted]. Whether the statute is ambiguous or not, the ultimate goal of this Court is to discern and give effect to the legislative intent.

*See also* ***Miss. Dep't of Transp. v. Allred***, 928 So. 2d 152, 154 (Miss. 2006). The applicable statutes are not ambiguous. Furthermore, whether UPL or DSH should be paid first was decided by the Legislature and complied with by DOM. The Advisory Board recommended

---

[6] Initially, all inpatient and outpatient services were reimbursed by Medicare at the "reasonable cost" rate, which calculated the reimbursement based on the hospital's cost in providing the services. *See* ***County of Los Angeles v. Shalala***, 192 F.3d 1005, 1008 (D.C. Cir. 1999). "Experience proved, however, that this system bred 'little incentive for hospitals to keep costs down' because '[t]he more they spent, the more they were reimbursed.'" ***Id.*** (citing ***Tucson Med. Ctr. v. Sullivan***, 947 F.2d 971, 974 (D.C. Cir.1991)).

[7] Uncontested by the Hospitals, their proposal would not fully exhaust the available UPL funding, leaving in excess of $60 million in UPL funds unspent.

to DOM that it adopt the HMA model, which paid UPL first, and the Legislature amended the statute to mirror the HMA's recommendation.

¶18. As both the chancellor and hearing officer determined:

> [Section] 43-13-145 and the State Plan Amendments direct DOM to make required UPL payments first because it requires all hospitals in certain classes to receive an across the board uniform percentage payment of inpatient payments to exhaust available UPL funds unlimited by DSH or OBRA limits. DSH payments are always limited by OBRA limits, both under federal and state law. State law recognizes that limitation in Section 43-13-145(g), 43-13-117(A)(l 8) and the State Plan. . . .

> On the other hand, the hospitals must receive a DSH payment so long as they do not exceed OBRA limits under the federal law, federal regulations, state law and the State Plan. If, however, the UPL payment puts the hospital over its OBRA limit, they cannot receive an additional DSH payment because they have met their OBRA limit. They receive a DSH payment of zero.

¶19. Since implementing this methodology in 2010, DOM has complied with the dictates of Sections 43-13-117 and 43-13-145, federal law, and its own State Plan. It has exhausted the maximum available DSH and UPL funds, per the directive of the Legislature.

¶20. The Hospitals have failed to identify any error, factual or legal, by the chancellor. We affirm the judgment of the chancellor, affirming DOM's findings that DOM's methodology for the distribution of DSH and UPL funds to hospitals in Mississippi comports with this State's law.

## CONCLUSION

¶21. We affirm the finding of the chancery court and DOM that DOM properly complied with state and federal law as to the distribution of DSH and UPL funds.

¶22. **AFFIRMED.**

9

**WALLER, C.J., KITCHENS, P.J., KING, COLEMAN, MAXWELL, BEAM, CHAMBERLIN AND ISHEE, JJ., CONCUR.**