# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2018-CA-01389-SCT

### *MISSISSIPPI STATE BOARD OF CONTRACTORS*

### *v.*

### *HOBBS CONSTRUCTION, LLC*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/17/2018 |
| TRIAL JUDGE: | HON. CARTER O. BISE |
| TRIAL COURT ATTORNEYS: | AUSTIN CLARK |
| | RUSSELL S. GILL |
| | B. PARKER BERRY |
| COURT FROM WHICH APPEALED: | CHANCERY COURT OF THE SECOND JUDICIAL DISTRICT OF HARRISON COUNTY |
| ATTORNEYS FOR APPELLANT: | B. PARKER BERRY |
| | HALEY GREGORY |
| | TOMMIE S. CARDIN |
| ATTORNEYS FOR APPELLEE: | AUSTIN CLARK |
| | RUSSELL S. GILL |
| | MICHAEL B. WALLACE |
| | REBECCA HAWKINS |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | AFFIRMED - 03/06/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**KITCHENS, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     At stake in this appeal is the ability of Hobbs Construction, LLC, to continue doing business in this state as a commercial general contractor. The Mississippi State Board of Contractors revoked the certificate of responsibility (COR) held by Hobbs, and it appealed to the Chancery Court of the Second Judicial District of Harrison County. The chancery court

granted Hobbs's motion for a preliminary injunction and enjoined the Board's revocation decision during the pendency of the appeal. Later the chancery court entered an order reversing the Board's decision and reinstating Hobbs's COR.

¶2.     The Board appeals, arguing that the chancery court erred because the Board's revocation decision was supported by substantial evidence, was not arbitrary and capricious, was within the Board's power to make, and did not violate Hobbs's statutory or constitutional rights. The Board argues also that the chancery court erred by granting a preliminary injunction. Because the Board violated Hobbs's constitutional right to due process of law by not providing sufficient notice of the charges that were considered at the revocation hearing and were a basis for the revocation decision, we affirm the order of the chancery court. We find further that the chancery court did not err by granting a preliminary injunction. Thus, we affirm.

**FACTS**

¶3.     On October 14, 2016, Pyramid Interiors Distributors filed a complaint with the State Board of Contractors against Hobbs, alleging that Hobbs owed it $13,390 for materials ordered in April 2016 and used in the Club 24 project in Flowood, Mississippi. The Board notified Hobbs of the complaint and requested that it respond in writing. Hobbs failed to do so. On December 16, 2016, the Board filed a complaint against Hobbs and provided notification that a hearing was set for January 11, 2017. Both the complaint and the notice of hearing were served on Hobbs by certified mail, as shown by the return receipt.

2

¶4.     On January 10, 2017, Hobbs executed a forbearance agreement with Pyramid in which it agreed to pay a compromised amount of $11,570 by January 31, 2017. Pyramid agreed to notify the Board that the parties were attempting to resolve the dispute and to request a continuance of the hearing. According to the agreement, if Pyramid received payment, it would withdraw its complaint. But if Hobbs failed to pay, Pyramid would proceed with its complaint before the Board. Hobbs's president, Allen Hobbs Mize, Jr., signed the agreement, but no one signed it on behalf of Pyramid. The same day, Garry Condrey, Pyramid's CFO, notified the Board by email that "Hobbs reached out to our attorney today and has agreed to pay Pyramid Interiors in full by 1/31/2016. We do not want to withdraw our complaint at this time but we would like to delay our hearing until the next available meeting to allow Hobbs the opportunity to pay us."

¶5.     Hobbs did not pay, and the Board filed an amended complaint on May 10, 2017. The amended complaint contained these allegations of fault against Hobbs:

> It is alleged that Respondent acted irresponsibly in violation of Miss. Code Ann. § 31-3-13. Specifically, Respondent contracted with Pyramid Interior Distributors in 2016 for doors and door hardware for use on a commercial project located [in Flowood]. The balance for this purchase totaled $13,390 and has not been paid.

The amended complaint warned Hobbs that, if it were found guilty, the Board could suspend or revoke its COR. A hearing was set for July 12, 2017. Again, Hobbs was served with the amended complaint and notice of hearing by certified mail, as shown by the return receipt.

¶6. No representative of either Pyramid or Hobbs appeared at the hearing.[1] The only testimony came from James Cushman, an investigator assigned by the Board to look into the matter, who presented his report. According to Cushman's report, Condrey, with whom he had spoken on November 8, 2016, said that Pyramid had made several attempts to collect the money owed and had turned the matter over to a collection agency. The report said that Cushman had spoken with Mize, Jr., on November 9, 2016. According to Cushman, Mize, Jr., had not disputed the bill and had said that he would pay it the next week. Investigator Cushman testified that, around that time, he had checked with Pyramid, but Hobbs had made no payments. Although Hobbs was not given notice that prior, closed matters would be considered, Investigator Cushman also testified about Hobbs's history before the Board, consisting of eight[2] prior complaints for failure to pay a subcontractor. All those complaints had been resolved in Hobbs's favor.[3]

¶7. The transcript reveals the Board's deliberations on the complaint against Hobbs. Board Member Laws noted that Hobbs had signed a forbearance agreement promising to pay

---

[1] The Board contends that, under Rule 2.1(c) of the Rules and Regulations of the State Board of Contractors as Applied to Commercial Contractors, Hobbs's failure to appear at the hearing "may be taken by the Board as evidence of the facts alleged in the formal complaint." But because Rule 2.1 sets forth the procedures for imposing a monetary penalty for a violation of Mississippi Code Section 31-3-21 (Supp. 2019), which governs bidding and awards, that regulation does not apply to this case.

[2] Investigator Cushman's report listed nine prior complaints, but one had been withdrawn by the subcontractor.

[3] Hobbs contends that all the complaints were resolved favorably after Hobbs had paid the subcontractors and that the amounts at issue ranged from two for around $500, five for less than $5,000 and two for more than $10,000, including Pyramid's.

Pyramid by the end of January but that he never had paid. He complained, "[w]e've seen this guy every meeting." Board Member Laws moved to revoke Hobbs's license, saying, "we know this guy is irresponsible. You know, if we let him continue doing business like he is it's just gonna be a matter of time before we see him again." Another member expressed concern that revoking Hobbs's license rather than suspending it would provide no incentive for Hobbs to settle its debt with Pyramid. Then the following occurred:

> BY BOARD MEMBER LAWS: I agree with you, but we've done that with him several times. To me it's just to the point that by letting him continue forward he's gonna be hurting somebody else. That's where I am.
>
> BY BOARD MEMBER FORDICE: I understand.
>
> BY THE CHAIRPERSON: In reality does Pyramid have—they have a case against him in civil court?
>
> BY MR. BERRY: Presumably. I don't have all the facts, but certainly if they have a contract with him and he's breached the contract to pay they would, you would think, have a separate civil action.
>
> BY THE CHAIRPERSON: It looks to me like when they're not paid that's the first place they ought to go, not here. They ought to just go to court.
>
> BY MR. BERRY: It's often cheaper to just file a complaint here and let y'all deal with it than having to hire an attorney to go to court. They may end up going there but this is the cheaper route to try to get him to pay.

Without further discussion, the Board voted 5-1 to revoke Hobbs's COR, with one member voting to suspend the COR.

¶8.     In its findings of fact and conclusions of law, the Board found that Hobbs was not responsible under Mississippi Code Section 31-3-13, considering the debt owed to Pyramid

and the "numerous prior violations."[4] On July 12, 2017, the Board revoked Hobbs's COR. Hobbs appealed to the chancery court on July 21, 2017. At an October 11, 2017 hearing before the Board, Hobbs requested reconsideration, but the Board refused to reinstate the COR.

¶9.     Hobbs moved for a preliminary injunction in chancery court. Hobbs alleged that it has been in the construction industry for thirteen years, and its experience includes building "restaurants, medical clinics, hurricane shelters, shopping centers, retail buildings, apartments, condominiums, government housing, and government recruiting offices." Hobbs averred that it employs twenty people and has business relationships with thirty subcontractors who work exclusively with Hobbs. Hobbs alleged that, without a preliminary injunction, it would lose business relationships and hundreds of thousands of dollars in expected profits, and its employees would have to seek other work. Hobbs requested a preliminary injunction to prevent irreparable harm. Hobbs attached an affidavit of Mize, Jr., in which he averred that he had executed the forbearance agreement under duress because he was under threat of having his license suspended. Hobbs also attached copies of the Board's records of the prior complaints and of pleadings in related litigation, noting that the Board had not considered the actual records of the prior complaints and instead had based its decision on the scanty information in Investigator Cushman's report. The Board opposed the preliminary injunction motion.

---

[4] Section 31-3-13(f) provides that the Board may revoke a COR upon a finding that the contractor is "not responsible." Miss. Code Ann. § 31-3-13(f) (Supp. 2019).

6

¶10. The chancery court granted a preliminary injunction, finding that Hobbs had a substantial likelihood of prevailing on the merits. The chancery court also found that the Board had failed to afford Hobbs due process because it had not identified or applied any statutory or administrative guidance defining "responsible," and it had relied on the prior complaints, all of which Hobbs ultimately had paid. And the chancery court found that Hobbs had made the requisite showing that irreparable harm would result without injunctive relief and that a preliminary injunction would not harm the Board.

¶11. In its decision on the merits, the chancery court reversed the Board's order, finding that a contract dispute between a prime contractor and a subcontractor is outside the Board's authority to regulate under Mississippi Code Section 31-3-2. And the chancery court found that the Board had failed to consider or apply the factors from Mississippi Code Section 31-3-13 for determining whether the holder of a COR is not responsible. The chancery court found that the Board's decision was not supported by substantial evidence, was arbitrary and capricious, was beyond the Board's power to make, and violated Hobbs's statutory or constitutional rights. The chancery court ordered that Hobbs's COR be reinstated. The Board appeals.

## DISCUSSION

I. **Whether the chancery court erred by reversing the decision of the Board.**

*A. Standard of Review*

¶12. On appeal of the decision of an administrative agency, all levels of review focus on the final decision of the agency. ***Pub. Emps.' Ret. Sys. v. Howard***, 905 So. 2d 1279, 1284-85

7

(Miss. 2005). Thus, this Court applies the same standard of review to the Board's decision as that applied by the chancellor. *Genesis Hospice Care, LLC v. Miss. Div. of Medicaid*, 267 So. 3d 779, 783 (Miss. 2019). "[T]he Court reviews the decision of an administrative agency to determine whether the decision was supported by substantial evidence, was arbitrary or capricious, was beyond the agency's power to adopt, or was violative of a constitutional or statutory provision." *Mem'l Hosp. at Gulfport v. Dzielak*, 250 So. 3d 397, 400 (Miss. 2018) (internal quotation marks omitted) (quoting *King v. Miss. Military Dep't*, 245 So. 3d 404, 407 (Miss. 2018)).

        *B.     Law Governing Contractors*

¶13.   Mississippi Code Section 31-3-3 establishes the State Board of Contractors, which is composed of ten members, all contractors, who are appointed by the governor. Miss. Code Ann. § 31-3-3 (Supp. 2019). Section 31-3-2 sets forth the Board's purpose:

> The purpose of this chapter, is to protect the health, safety and general welfare of all persons dealing with those who are engaged in the vocation of contracting and to afford such persons an effective and practical protection against incompetent, inexperienced, unlawful and fraudulent acts of contractors.

Miss. Code Ann. § 31-3-2 (Rev. 2010). The Board has the authority to issue CORs to those contractors whom the Board finds responsible. Miss. Code Ann. § 31-3-13 (Supp. 2019). When determining the qualifications of an original applicant for a COR or a renewal of a COR, the Board must consider the following factors, "among other things":

> (i) experience and ability, (ii) character, (iii) the manner of performance of previous contracts, (iv) financial condition, (v) equipment, (vi) personnel, (vii) work completed, (viii) work on hand, (ix) ability to perform satisfactorily work under contract at the time of an application for a certificate of responsibility

or a renewal thereof, (x) default in complying with provisions of this law, or any other law of the state, and (xi) the results of objective, standardized examinations.

Miss. Code. Ann. § 31-3-13(h) (Supp. 2019).

¶14. The Board may revoke a COR "upon a finding by the board that a particular contractor or qualifying party is not responsible." Miss. Code Ann. § 31-3-13(f) (Supp. 2019). The Board may suspend a COR for cause. *Id.* Before the Board may suspend or revoke a COR, the Board must afford the contractor ten days' notice of a hearing at which the contractor shall have "an opportunity to present all lawful evidence which he may offer." *Id.*

  *C. The Board failed to afford Hobbs procedural due process.*

¶15. The Board makes several arguments urging this Court to reverse the judgment of the chancery court that reinstated Hobbs's COR. The Board argues that its decision that Hobbs was not responsible was supported by substantial evidence. It also argues that the chancellor misinterpreted the governing statutes to require the Board to have considered the factors from Section 31-3-13(h) in the revocation decision. Further, the Board contends that the chancery court erred by finding that the Board had deprived Hobbs of procedural due process. Because we find this issue dispositive, we do not address the Board's other issues.

¶16. Hobbs argues that the Board's decision violated its procedural due process rights because Hobbs was not given notice that the Board would consider the prior complaints in making the revocation decision. To the contrary, the amended complaint listed only Hobbs's failure to pay Pyramid as the sole basis for revocation or suspension of its certificate of

9

responsibility (COR). But the Board's minutes reflect that its members decided, after learning from the investigator that Hobbs had eight prior complaints, that they were tired of dealing with him and that his license should be revoked. The Board based its final decision that Hobbs was not responsible under Section 31-3-13 on both the debt owed to Pyramid and the "numerous prior violations." Applying the clear precedent of the United States Supreme Court and this Court, the Board violated Hobbs's right to procedural due process by failing to inform it that the prior violations would be considered.

¶17. The holder of a license issued by the government that entitles the holder to perform specific kinds of work to earn a living has a protected property interest in the license and must be afforded due process before being deprived of the license. *Simpson v. Brown Cty.*, 860 F.3d 1001, 1006 (7th Cir. 2017). "This Court has held that 'an administrative [agency] must afford minimum procedural due process under the Fourteenth Amendment to the United States Constitution and under Art. 3, § 14 of the Mississippi Constitution consisting of (1) notice and (2) opportunity to be heard.'" *Molden v. Miss. State Dep't of Health*, 730 So. 2d 29, 35 (Miss. 1998) (alteration in original) (quoting *Booth v. Miss. Emp't Sec. Comm'n*, 588 So. 2d 422, 428 (Miss. 1991)). Notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* at 37 (quoting *Booth*, 588 So. 2d at 427). "The notice must be of such nature as reasonably to convey the required information . . . ." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314, 70 S. Ct. 652, 94 L. Ed. 865 (1950) (citing *Grannis v. Ordean*, 234 U.S. 385, 34 S. Ct. 779, 58 L. Ed. 1363 (1914)). "The

10

means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." *Id.* at 315.

¶18.    The right to an opportunity to be heard includes "a reasonable opportunity to know the claims of the opposing party and to meet them." *Morgan v. United States*, 304 U.S. 1, 18, 58 S. Ct. 773, 82 L. Ed. 1129 (1938). "Those who are brought into contest with the Government in a quasijudicial proceeding aimed at the control of their activities are entitled to be fairly advised of what the Government proposes and to be heard upon its proposals before it issues its final command." *Id.* at 18-19. Therefore, "[a] party is entitled . . . to know the issues on which decision will turn and to be apprised of the factual material on which the agency relies for decision so that he may rebut it." *Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc.*, 419 U.S. 281, 288 n.4, 95 S. Ct. 438, 42 L. Ed. 2d 447 (1974). Additionally, the United States Supreme Court has held in the context of an attorney disbarment proceeding that the government may not add charges based upon testimony about new misconduct that was received at the hearing. *In re Ruffalo*, 390 U.S. 544, 551, 88 S. Ct. 1222, 20 L. Ed. 2d 117 (1968) ("The charge must be known before the proceedings commence. They become a trap when, after they are underway, the charges are amended on the basis of the testimony . . . .").

¶19.    This Court has recognized the constitutional due process requirement that a license holder be given notice of the specific charges to be used as the basis for revoking the license. *Miss. State Bd. of Nursing v. Wilson*, 624 So. 2d 485, 494-95 (Miss. 1993). The Court of Appeals applied this rule in *Holt v. Mississippi State Board of Dental Examiners*, 131 So.

11

3d 1271 (Miss. Ct. App. 2014). In *Holt*, the Mississippi State Board of Dental Examiners suspended Dr. Holt's license to practice dentistry based on an assortment of violations. *Id.* at 1275. Dr. Holt complained that he was given insufficient notice of three counts of misconduct for oversedating some of his patients. *Id.* at 1279. The Court of Appeals recognized that due process does not require a particular form of notice to satisfy the constitution. *Id.* (quoting *Miss. Bd. of Veterinary Med. v. Geotes*, 770 So. 2d 940, 943 (Miss. 2000)). Rather, "[d]ue process is flexible and calls for such procedural protections as the particular situation demands." *Id.* (internal quotation marks omitted) (quoting *Geotes*, 770 So. 2d at 943). What is required is "the opportunity to be heard at a meaningful time and in a meaningful manner." *Id.* (internal quotation mark omitted) (quoting *Geotes*, 770 So. 2d at 943). But a party must be afforded such notice as affords an opportunity to present his objections. *Id.*

¶20.    The Court of Appeals relied on this Court's holding in *Miller v. State Board of Pharmacy*, explaining that

> The revocation of a professional license is a matter of the most serious consequences. Proceedings directed toward that end have not been regarded in Mississippi as criminal in character. Nevertheless, the professional man accused of derelictions of such gravity as to justify revocation of his license to practice his profession, is entitled, as a matter of right, to be informed of the nature of the charge against him, if not with the exact specificity required in a criminal indictment, the charge must be made with not less exactitude and fullness than would be necessary in a bill of complaint or declaration in a civil case. Moreover, he is entitled to demand and obtain a bill of particulars or require that the charge be made more definite and certain under circumstances prescribed in the statutes, practice and procedure of this State.

*Holt*, 131 So. 3d at 1280 (quoting *Miller v. State Bd. of Pharmacy*, 262 So. 2d 188, 189 (Miss. 1972)). The Court of Appeals concluded that, because Dr. Holt had not been charged with oversedating patients, his right to due process had been violated by the Board's decision to suspend his license based in part on that misconduct. *Id.*

¶21.    Other states' courts have come to similar conclusions involving similar factual scenarios. *See* *Sternberg v. Dept. of Prof'l Regulation, Bd. of Med. Exam'rs*, 465 So. 2d 1324, 1325 (Fla. Dist. Ct. App. 1985) (The district court of appeal held that the Board of Medical Examiners denied a physician due process by finding him guilty of an offense not charged in the administrative complaint.); *Wolfenbarger v. Hennessee*, 520 P.2d 809, 812 (Okla. 1974) (The Supreme Court of Oklahoma reversed the revocation of a pawnbroker's license on procedural due process grounds because the licensee was not notified of the factual basis of the charges.). These fundamental precepts of due process also were applied by the Court of Appeals of North Carolina in the specific context of a contractor's license. In *In re Trulove*, 282 S.E.2d 544, 547 (N.C. Ct. App. 1981), a licensure board suspended a contractor's license for placing his seal on engineering work which had not been prepared under the contractor's charge and for gross negligence for sealing the work of another knowing the plans were not in compliance with the building code. The North Carolina Court of Appeals found that, although the Board's ultimate findings were sufficient to support the suspension of the contractor's license, the suspension was reversible error because the Board had not provided the contractor sufficient notice of the charged facts before the hearing. *Id.* at 548. The Court held,

13

> Trulove was notified only that the charges against him involved gross negligence, incompetence or misconduct resulting from his noncompliance with [governing statutes and rules]. Thus, the Board gave Trulove absolutely no notice that he was being charged with knowingly sealing non-conforming plans or that he was being charged with sealing the work of others for the purpose of procuring planning board approval of the plans, knowing that the plans were not in compliance with the North Carolina State Building Code.

*Id.* (footnotes omitted) (citations omitted). Due to the lack of notice, the contractor was deprived of the opportunity to prepare his defense in violation of due process. *Id.*

¶22.    Due process requires some form of notice, be it by statute, rule, regulation, applicable judicial decision, agency decision, or communication from the licensing authority to the licensee reasonably calculated to inform the licensee that history will be considered. This point is illustrated by ***Disciplinary Bd. of N.D. v. Garcia (In re Garcia)***, 366 N.W.2d 482, 483 (N.D. 1985). In ***Garcia***, an attorney discipline matter, Attorney Garcia was charged with misconduct in an informal complaint and, later, a formal complaint that culminated in the suspension of his license to practice law. *Id.* at 483-84. He argued that his due process rights had been violated because he was not given notice that the Inquiry Committee would consider his disciplinary history in the disposition of the informal complaint. *Id.* at 485. The Supreme Court of North Dakota held that Attorney Garcia's due process rights had not been violated for two reasons: (1) a bar rule had placed him on notice that the Inquiry Committee would consider his disciplinary history, and (2) the formal complaint made allegations concerning his disciplinary history, thereby giving him an opportunity to attack any inaccuracies during the formal complaint hearing. *Id.* Because Garcia had, in fact, been afforded sufficient notice that his disciplinary history would be considered in the adjudication

14

of the new charge, the North Dakota Supreme Court found that his due process rights were not violated. *Id.* Notably, the North Dakota Supreme Court did not hold that the licensing entity automatically could consider the licensee's history without notice as part of its inherent powers. This is because notice sufficient to satisfy the Due Process Clause differs from a licensing entity's authority to carry out its business.

¶23.   Turning to the facts of this case, the amended complaint provided the following notice to Hobbs:

> It is alleged that Respondent acted irresponsibly in violation of Miss. Code Ann. § 31-3-13. Specifically, Respondent contracted with Pyramid Interior Distributors in 2016 for doors and door hardware for use on a commercial project located [in Flowood, Mississippi]. The balance for this purchase totaled $13,390 and has not been paid.

The amended complaint gave no indication that any prior complaints against Hobbs would be considered. Because the amended complaint clearly set forth the charge relating to Pyramid, and Pyramid alone, nothing in the notice reasonably should have prompted Hobbs to request that the charge be made more definite and certain. Not only did the amended complaint's specific charging language omit any reference to the prior complaints, it was devoid of even a subtle hint that would have put Hobbs on notice that prior complaints before the Board would be considered. Nor does any statute or regulation applicable to the Board suggest that the Board might consider prior complaints when evaluating a complaint against the holder of a COR.[5] Therefore, a careful perusal of the amended complaint and of the

___

[5] Nothing in the statutes applicable to the Board can be said to be reasonably calculated to place COR holders on notice that, in a revocation proceeding, the Board will look beyond the four corners of a given complaint to the COR holder's disciplinary history. While the factors in Mississippi Code Section 31-3-13(h) (Supp. 2019) for determining

applicable law reveals that, unlike in the *Garcia* case, Hobbs was given no notice whatsoever that the Board would consider the prior complaints when it adjudicated the matter of his contract dispute with Pyramid.

¶24. In *Mullane*, the United States Supreme Court emphasized that notice must be sufficient to enable the recipient to make an informed decision whether "to appear or default, acquiesce or contest." *Mullane*, 339 U.S. at 314. It is clear that one charged with license-imperiling conduct legitimately may choose to default or acquiesce rather than to appear and defend the charges. But in order to make a fully informed choice whether to appear, contest, default, or acquiesce, the licensee must have notice sufficient to enable its defense of the charges that will be considered by the government in deciding whether to suspend or revoke the license.

¶25. Hobbs, having been served with several prior notices of its failure to pay a subcontractor that had resulted in the suspension of its license followed by reinstatement once the payment dispute was resolved, reasonably could have assumed from the amended complaint that the Pyramid matter would be resolved in the same fashion, obviating its need

---

whether a contractor is responsible for the purpose of issuing or renewing a COR might be construed to place a COR holder on notice that the Board can consider past conduct in a suspension or revocation decision, Hobbs was not notified that the Board would consider those factors in this case. Rather, the complaint was based solely on the debt to Pyramid, and the Board strenuously argues that it did not, and does not have to, consider the factors in a suspension or revocation decision.

Rule 2.2 of the Rules and Regulations of the State Board of Contractors as Applied to Commercial Contractors does say that a prior violation may be considered when determining the amount of a monetary penalty under Section 31-3-21, which governs bidding and awards. Miss. Code Ann. § 31-3-21 (Supp. 2019). But Rule 2.2 does not apply to the revocation of a COR.

to appear at the hearing. From the notice provided, Hobbs would have been justified in believing that the hearing would focus solely on the dispute with Pyramid, not on that matter in addition to the prior complaints. The notice was such that, if Hobbs had appeared at the hearing, it would not have been prepared to defend its conduct related to the prior complaints. But if Hobbs had received the requisite notice, it would have been fully informed of all the conduct to be considered by the Board and could have adjusted its response accordingly. Indeed, Hobbs argues that, regarding five of the prior complaints, it did not pay the subcontractor due to payment dispute litigation with the project owner. But because Hobbs was not informed in advance of the hearing that the Board would consider the prior complaints, nothing prompted it to place this rebuttal evidence before the Board. We note that the due process problem in this case easily could have been obviated by a simple statement in the notice to Hobbs that the Board would consider prior disciplinary proceedings.

¶26. Because the notice given Hobbs was limited to the charge of its alleged failure to pay Pyramid and did not inform it that the Board would consider prior complaints, the notice was insufficient. The notice did not afford Hobbs a full opportunity to know the charges against it and to present a responsive defense. Therefore, the Board violated Hobbs's right to procedural due process by revoking its license on grounds other than those for which it was provided notice in advance of the hearing. For that reason, we affirm the decision of the Chancery Court of the Second Judicial District of Harrison County that reversed the decision of the Board to revoke Hobbs's COR.

17

¶27. Alternatively, Hobbs argues that the resolution of a payment dispute is a judicial function outside the purview of the Board's authority under Section 31-3-2. It is true that the Board lacks any statutory mandate to adjudicate contract disputes. Rather, a subcontractor has the options of either filing a lawsuit and/or of placing a lien on the project under Mississippi Code Section 85-7-405 (Supp. 2019). According to the Board's minutes, the purpose of many of the prior complaints was to threaten Hobbs with suspension with the object of coercing its payment to a subcontractor. As Chief Justice Randolph discusses in his separate opinion, Pyramid used such tactics before the Board in this very case. But the Board had no authority to condition Hobbs's ability to engage in the contracting business on its payment of a disputed debt, and no judicial determination exists that Hobbs owed anything to those subcontractors. Indeed, the Supreme Court of Nevada has found that a board of contractors cannot assume a judicial role by using its power to suspend a contractor's license to resolve a contract dispute between a contractor and a subcontractor. *Bivins Constr. v. State Contractors' Bd.*, 809 P.2d 1268, 1270 (Nev. 1991). In so handling the prior complaints against Hobbs, the Board coerced payment of disputed debts. The fact that such action was and is outside the Board's authority is an additional reason that those complaints should not have been considered in revoking Hobbs's COR.

## II. Whether the chancery court erred by granting a preliminary injunction.

¶28. The Board argues that the chancery court lacked authority to grant a preliminary injunction under the statutory scheme applicable to appeals from the State Board of

18

Contractors. Alternatively, it argues that the grant of a preliminary injunction was an abuse of discretion.

¶29. The chancery court considers the following factors in granting a preliminary injunction: "(1) There exists a substantial likelihood that plaintiff will prevail on the merits; (2) The injunction is necessary to prevent irreparable injury; (3) Threatened injury to the plaintiffs outweighs the harm an injunction might do to the defendants; and (4) Entry of a preliminary injunction is consistent with the public interest." *A-1 Pallet Co. v. City of Jackson*, 40 So. 3d 563, 568-69 (Miss. 2010) (quoting *City of Durant v. Humphreys Cty. Mem'l Hosp./Extended Care Facility*, 587 So. 2d 244, 250 (Miss. 1991)). On appeal, this Court reviews the grant of injunctive relief for abuse of discretion. *City of Durant*, 587 So. 2d at 250. Questions of law are reviewed *de novo*. *Miss. Power Co. v. Hanson*, 905 So. 2d 547, 549 (Miss. 2005).

¶30. Hobbs argues that the issue of whether a preliminary injunction should have issued to allow Hobbs to continue in business during the pendency of the chancery court appeal is moot. This Court has held that an issue on appeal is moot when any action taken by the appellate court would be of no consequence to either party and deciding the issue would amount to nothing more than an academic exercise. In *Electronic Data Systems Corp. v. Mississippi Division of Medicaid*, 853 So. 2d 1192, 1207 (Miss. 2003), the chancery court had denied a motion for a preliminary injunction pending an appeal of an administrative agency decision. This Court found that the issue of whether the chancellor erred by denying the preliminary injunction was moot. *Id.* But in other instances, this Court has reviewed the

19

propriety of a preliminary injunction on appeal despite the apparent lack of benefit or detriment to either party. *Am. Legion Post #134 v. Miss. Gaming Comm'n*, 798 So. 2d 445, 455 (Miss. 2001).

¶31. In this case, the preliminary injunction issued, and Hobbs was permitted to engage in the business of commercial contracting during the pendency of the chancery court appeal. Once the chancery court had entered its decision, the preliminary injunction dissolved. At this point, a decision on the merits of the preliminary injunction would not be beneficial or detrimental to either party. But the Board argues that the issue is not moot because this statutory interpretation question will arise in future appeals from Board decisions.

> This Court will not consider a case to be moot if the challenged action is capable of repetition yet evading review, meaning that "(1) The challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) There was a reasonable expectation that the same complaining party would be subject to the same action again."

*Barrett v. City of Gulfport*, 196 So. 3d 905, 912 (Miss. 2016) (quoting *Strong v. Bostick*, 420 So. 2d 1356, 1359 (Miss. 1982)). We find that this case meets these criteria, and we consider the Board's argument that the language of Section 31-3-23 forecloses the grant of a preliminary injunction.

¶32. Section 31-3-23 governs appeals to chancery court from the Board and provides, in pertinent part, that

> Appeals may be had to the Supreme Court of the State of Mississippi as provided by law from any final action of the chancery court. The board may employ counsel to defend such appeals, to be paid out of the funds in the State Board of Contractors Fund.

On appeal, any order, judgment or action of the board revoking a certificate of responsibility or residential license shall remain in full force unless the chancery court or Supreme Court reverses such order, judgment or action of the board.

The remedies provided under this chapter for any aggrieved person shall not be exclusive, but shall be cumulative of and supplemental to any other remedies which he may otherwise have in law or in equity, whether by injunction or otherwise.

Miss. Code. Ann. § 31-3-23 (Supp. 2019).

¶33. The Board cites *Falco Lime, Inc. v. Mayor and Aldermen of Vicksburg* for the proposition that "[a]n injunction will not issue when the complainants have a complete and adequate remedy by appeal." *Falco Lime, Inc. v. Mayor and Aldermen of Vicksburg*, 836 So. 2d 711, 716 (Miss. 2002) (internal quotation mark omitted) (quoting *Benedict v. City of Hattiesburg*, 693 So. 2d 377, 381 (Miss. 1997)). In *Falco Lime*, the complainant sought injunctive relief in circuit court instead of appealing from the decision of a municipal body. *Id.* The Court found that injunctive relief was not proper because the appropriate avenue for relief was the appeal allowed by statute. *Id.* at 717. *Falco Lime* is distinguishable from this case because the language of the appeal statute in *Falco Lime* was different from that in Section 31-3-23. Unlike in *Falco Lime*, Section 31-3-23 says that the appeal is "cumulative and supplemental of any other remedies he may otherwise have in law or equity, whether by injunction or otherwise."

¶34. Anticipating this argument, the Board counters that other language in Section 31-3-23 removes a chancellor's ability to grant a preliminary injunction. In 2015, Section 31-3-23 was amended to include the language that "[o]n appeal, any order, judgment or action of the

board revoking a certificate of responsibility or residential license shall remain in full force unless the chancery court or Supreme Court reverses such order, judgment or action of the board." S.B. 2508, Reg. Sess., 2015 Miss. Laws ch. 410, § 10. The Board argues that, because a preliminary injunction prevents the Board's revocation of a COR from remaining in full force until the chancery court reverses the Board's order, Section 31-3-23 prohibits a preliminary injunction.

¶35. We observe that the language of Section 31-3-23 does seem to be in conflict. Section 31-3-23 does provide that the chancery court may grant any equitable relief, including injunctive relief. But the statute also provides that the Board's order shall remain in full force until reversed. "When statutes are ambiguous and potentially in conflict, as in this case, we look to the rules of statutory construction for guidance." *Tunica Cty. v. Hampton Co. Nat. Sur., LLC*, 27 So. 3d 1128, 1133 (Miss. 2009). If possible, statutory language in apparent conflict must be construed harmoniously to give effect to all statutory language. *Id.* at 1134 (quoting *Miss. Gaming Comm'n v. Imperial Palace of Miss.*, 751 So. 2d 1025, 1029 (Miss. 1999)). We find that harmony is achieved by construing the "full force" language in Section 31-3-23 to prohibit a stay of the Board's order; but the statutory language providing for equitable relief, including injunctions, permits the chancery court to issue a preliminary injunction when all the elements are met. And we hold further that the chancery court did not abuse its discretion by finding that the elements for a preliminary injunction were met.

**CONCLUSION**

¶36. This Court finds that the Board's decision revoking Hobbs's COR violated its right to procedural due process. We affirm the order of the Chancery Court of the Second Judicial District of Harrison County, Second Judicial District, reversing the order of the State Board of Contractors. We also affirm the chancery court's grant of a preliminary injunction.

¶37. **AFFIRMED.**

**KING, P.J., AND ISHEE, J., CONCUR. GRIFFIS, J., CONCURS IN PART AND IN RESULT WITHOUT SEPARATE WRITTEN OPINION. RANDOLPH, C.J., CONCURS IN RESULT ONLY WITH SEPARATE WRITTEN OPINION JOINED BY ISHEE AND GRIFFIS, JJ.; KITCHENS, P.J., JOINS IN PART. BEAM, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY COLEMAN, MAXWELL AND CHAMBERLIN, JJ.**

**RANDOLPH, CHIEF JUSTICE, CONCURRING IN RESULT ONLY:**

¶38. I would affirm the chancellor's judgment. The chancellor found that

> [a] contract dispute between the prime contractor and a subcontractor . . . is not within the parameters of Mississippi Code Section 31–3–2. [Section 31–3–2] is to protect the health, safety, and general welfare of the public from incompetent, inexperience, unlawful, and fraudulent acts of contractors. The Court finds that nonpayment of a debt does not constitute incompetence, inexperience, unlawful or fraudulent action, under Section 31–3–2 . . . .

¶39. This Court applies the same standard of review to the Mississippi State Board of Contractors's (Board) decision as that applied by the chancellor. *Genesis Hospice Care, LLC v. Miss. Div. of Medicaid*, 267 So. 3d 779, 783 (Miss. 2019). "[T]he Court reviews the decision of an administrative agency to determine whether the decision was supported by substantial evidence, was arbitrary or capricious, was beyond the agency's power to adopt, or was violative of a constitutional or statutory provision." *Mem'l Hosp. at Gulfport v.*

23

*Dzielak*, 250 So. 3d 397, 400 (Miss. 2018) (internal quotation marks omitted) (quoting *King v. Miss. Military Dept.*, 245 So. 3d 404, 407 (Miss. 2018)). Reviewing the record before us, it is clear that the Board delayed its statutory duty to the public at the whim of the complainant, acting more like a debt collection service than a public regulator.

¶40.     On October 14, 2016, Pyramid Interiors Distributors (Pyramid), a subcontractor working with Hobbs Construction (Hobbs), filed a complaint with the Board alleging that Hobbs had failed to pay it $13,390 for materials ordered and used in a project. After Hobbs failed to answer the Board's request for a response, the Board filed a complaint against Hobbs on December 16, 2016. On January 10, 2017, the day before the Board's hearing, Hobbs executed a forbearance agreement to pay $1,820 less than the initial claim with Pyramid. In that agreement, Hobbs promised to pay $11,570 before January 31, 2017. That same day, January 10, 2017, Pyramid requested and was granted a continuance of the hearing, in violation of the established rules of the Board.[6] Pyramid's email read, "[w]e do not want to withdraw our complaint at this time but we would like to delay our hearing until the next available meeting to allow Hobbs the opportunity to pay us." Clearly the purpose of

---

[6]     Any request for continuance must be made in writing and presented to the Board staff at least five (5) days prior to the scheduled hearing or, upon good cause shown, at any time prior to the hearing. Continuances will not be routinely granted. Instead, a party must show substantial, legitimate grounds for a continuance. Where scheduling conflicts are the basis for requesting a continuance, the party shall provide written proof of such conflicts in a timely manner as set forth herein.

30 Miss. Admin. Code Pt. 802, R. 2.1(f) (adopted Sept. 8, 2011), Westlaw.

the delay was to extract payment, not to have the certificate of responsibility (COR) revoked to protect the public.

¶41.    Hobbs failed to pay on or before January 31, 2017, yet the Board failed to file an amended complaint until May 10, 2017, once again failing to protect the public in the interim. A new hearing date was set for July 12, 2017. Neither Pyramid nor Hobbs attended that hearing. After discussion of the Board's investigative report at the hearing, we find in the record the following statements:

> BY THE CHAIRPERSON: In reality does Pyramid have - - they have a case against him in civil court?
>
> BY MR. BERRY[7]: Presumably, I don't have all the facts, but certainly if they have a contract with him and he's breached the contract to pay they would, you would think, have a separate civil action.
>
> BY THE CHAIRPERSON: It looks to me like when they're not paid that's the first place they ought to go, not here. They ought to just go to court.

After the Board's discussion, the Board finally decided to revoke Hobbs's COR. Hobbs requested reconsideration, and, about one year after the conflict was initially filed, the Board refused to reinstate the COR. Hobbs sought relief in the Harrison County Chancery Court.

¶42.    The chancery court reversed the Board's order. The court was at a loss to evaluate the legal basis for the Board's decision. Neither the statutes nor the Board's rules and regulations address what the Board should consider when determining irresponsibility. The chancellor looked for guidance in Mississippi Code Section 31–3–13(h), which provides eleven factors that must be considered when determining the opposite, i.e., responsibility, for an initial grant

---

[7] Parker Berry, Esq., represented the Board at the hearing and on appeal.

of a COR or renewal.[8] The chancellor found in the record produced that the Board failed to address all of those considerations. Additionally, the chancellor found that the dispute between Hobbs and Pyramid was outside the Board's authority to regulate under Mississippi Code Section 31–3–2. Applying the deferential standard of review accorded administrative agencies and boards,[9] the chancellor found that the Board's decision was not supported by substantial evidence, was arbitrary and capricious, was beyond the Board's power to make, and violated Hobbs's statutory and constitutional rights.

¶43. Examining the record before us, I agree with the chancellor that the Board's decision should be reversed. It is clear that the Board allowed itself to become involved in a private dispute in derogation of the Board's statutory duty to the public. The purpose of the Board is "to protect the health, safety and general welfare of all persons dealing with those who are

---

[8]      The board, in determining the qualifications of any applicant for an original certificate of responsibility or any renewal thereof, shall, among other things, take into consideration the following: (i) experience and ability; (ii) character, (iii) the manner of performance of previous contracts, (iv) financial condition, (v) equipment, (vi) personnel, (vii) work completed, (viii) work on hand, (ix) ability to perform satisfactorily work under contract at the time of an application for a certificate of responsibility or a renewal thereof, (x) default in complying with provisions of this law, or any other law of the state, and (xi) the results of objective, standardized examinations.

Miss. Code. Ann. § 31–3–13(h) (Supp. 2019).

[9]"[T]he Court reviews the decision of an administrative agency to determine whether the decision was supported by substantial evidence, was arbitrary or capricious, was beyond the agency's power to adopt, or was violative of a constitutional or statutory provision." *Mem'l Hosp. at Gulfport*, 250 So. 3d at 400 (internal quotation marks omitted) (quoting *King*, 245 So. 3d at 407).

engaged in the vocation of contracting and to afford such persons an effective and practical protection against incompetent, inexperienced, unlawful and fraudulent acts of contractors." Miss. Code Ann. § 31–3–2 (Rev. 2010). The Board's role is not that of a debt collector, nor should it act as a quasi-judicial civil claims tribunal. It is meant to function as a guardian of the public good. Further, the Board's own rules are silent regarding the circumstances required for revocation or suspension and the factors to consider when assessing such a punishment. The Board ostensibly realized this and in error chose to utilize its rules concerning assessment of monetary fines to determine if a COR should be revoked.[10]

¶44.   A treatise cautioning licensing boards offers sage advice that boards would do well to heed:

> In some cases, a party to a construction dispute will attempt to leverage its case by seeking to invoke the applicable licensing board in the controversy. Complaints by parties involved in contractual disputes require careful examination, particularly if the complaint focuses on the quality or cost of the

---

[10]   In determining the amount of a monetary penalty, the Board shall consider at a minimum the following:

(1) The willfulness of the violation;

(2) Any cost of restoration and abatement;

(3) Any economic benefit to the violator(s) as a result of noncompliance;

(4) The seriousness of the violation, including any harm to the environment and any harm to the health and safety of the public; and

(5) Any prior violation by such violator(s).

30 Miss. Admin. Code Pt. 802, R. 2.2 (adopted Sept. 8, 2011), Westlaw.

work. Boards who intervene in civil disputes and effectively require one of the parties to pay contract damages to the other *can quickly find themselves exceeding their authority*.

5 Philip L. Bruner and Patrick J. O'Connor, Jr., *Construction Law* § 16.26, Westlaw (database updated Jan. 2020) (emphasis added) (footnote omitted). One state has grappled with just such a situation.

> We are also troubled by the Board's assumption of what was essentially a judicial role in the resolution of this dispute. Its suspension of appellant's contractor's license pending payment of Pipes Paving's claim was tantamount to the award of contract damages in a contested case. The Board does not have the authority to impose damages upon parties subject to its licensing authority. *See* NRS 624.300(1). The parties' claims and counterclaims regarding their contract raised legal issues properly resolvable only by a court of law, if not by the parties themselves. We trust the Board will be mindful of these implications in its future decision-making.

***Bivins Const. v. State Contractors' Bd.***, 809 P.2d 1268, 1270 (Nev. 1991).

¶45.    Under the facts of this case, the Mississippi State Board of Contractors exceeded its powers and violated its own rules. It has allowed aggrieved parties to obtain relief through a misuse of their power that, while not as serious as, is akin to using criminal processes to collect civil debts. The Board abdicated control of its own docket, appeasing the wishes of a complainant to delay action, while delaying its duty to the public. The chancellor recognized as much and reversed. I agree and would affirm the judgment of the chancery court.

    **ISHEE AND GRIFFIS, JJ., JOIN THIS OPINION.  KITCHENS, P.J., JOINS THIS OPINION IN PART.**

    **BEAM, JUSTICE, DISSENTING:**

¶46. Because I would uphold the Mississippi State Board of Contractors' decision to revoke Hobbs Construction's certificate of responsibility (COR), I respectfully dissent from this Court's decision to affirm the chancery court's reversal of it.

¶47. At the outset, I agree that the Board is not vested with judicial authority to resolve contractual disputes between contractors and subcontractors. But the Board is tasked with certain responsibilities by the Legislature in its mandate to protect persons from incompetent and unethical contractors. Thus, a fine line exists between what may be considered proper or improper measures taken by the Board in carrying out that mandate.

¶48. That line is not blurred here, though, because the Board's minutes show that it did not revoke Hobbs's COR for the purpose of coercing payment or awarding damages to Pyramid. Rather, the Board considered Hobbs's failure to pay Pyramid as evidence that Hobbs was not responsible and that others should be protected from future misdealings by Hobbs.

¶49. Also, that the Board took into consideration Hobbs's disciplinary history without formally notifying Hobbs that it could do so, did not violate Hobbs's right to due process. According to the record, the Board provided Hobbs proper notice and an opportunity to be heard in every prior instance that resulted in Hobbs's being sanctioned.

¶50. But as in this instance, Hobbs routinely chose not to appear before the Board and respond to the complaint(s). Having made that choice, those matters constitute uncontested disciplinary adjudications as far as I am concerned. They are part of Hobbs's record, which Mississippi Code Section 31-3-13 requires the Board to maintain and to disseminate to any interested person. *See* Miss. Code Ann. § 31-3-13(b), (c), and (d) (Supp. 2019). Thus, it

29

stretches credulity for Hobbs, as a COR holder, to claim unfair surprise by the Board's having taken that disciplinary record into consideration for its decision in this case.

¶51. As Presiding Justice Kitchens implicitly lays out, this will be a quick fix for the Board going forward. Nevertheless, I must dissent from this Court's decision to affirm the chancery court's judgment in this case. Based on my review of the record, the Board's decision to revoke Hobbs's COR is supported by sufficient evidence, is not beyond its authority, and does not violate Hobbs's statutory or constitutional rights.

**COLEMAN, MAXWELL AND CHAMBERLIN, JJ., JOIN THIS OPINION.**